In re the Matter of Nancy SOOHOO,
petitioner, Respondent,

v.

Marilyn JOHNSON, Appellant.

No. A05–537.

Supreme Court of Minnesota.

May 10, 2007.

M. Sue Wilson, James T. Williamson, M. Sue Wilson Law Offices, P.A., Minneapolis, MN, for Appellant.

Michael L. Perlman, Perlman Law Office, Minnetonka, MN, for Respondent.

## OPINION

PAGE, Justice.

Appellant Marilyn Johnson appeals from the judgment of the district court granting respondent Nancy SooHoo's petition seeking visitation with Johnson's two minor children pursuant to Minn.Stat. § 257C.08, subd. 4 (2006), which allows the court to grant reasonable visitation to a person with whom the child has resided for at least two years. Johnson challenges the constitutionality of section 257C.08, subdivision 4, as well as the visitation schedule ordered by the court. In addition, Johnson challenges the court's order requiring Johnson to attend counseling "to address her tension and anxiety relative to the girls" and the discretion awarded by the court to SooHoo's therapist to determine "whether either child or both needs to accompany [SooHoo] to therapy." We conclude that the statute is constitutional both on its face and as applied, and that the court did not abuse its discretion in the amount of visitation it ordered or in awarding visitation without first holding an evidentiary hearing. We also conclude, however, that the court abused its discretion in ordering Johnson to attend therapy. Accordingly, we affirm in part and reverse in part.

Johnson and SooHoo, who lived together and jointly owned a house in Minneapolis, ended a 22–year relationship in the fall of 2003. During the course of that relationship, Johnson adopted two children from China. When Johnson adopted the first child, both she and SooHoo traveled to China. When Johnson adopted the second child, SooHoo remained in Minneapolis and cared for the first child while Johnson went to China. SooHoo did not adopt either of the children, but the record indicates that Johnson and SooHoo co-parented the children, recognized themselves as a family unit with two mothers, and represented themselves to others as such. For example, SooHoo took maternity leave to care for both children upon their arrival in the United States. SooHoo also participated in the selection of child-care providers and schools for the children and shared in the daily parenting responsibilities, including dropping off and picking up the children from day care, helping with school projects and homework, preparing meals for the family, taking the children to doc-

tors appointments (including authorizing the children's immunizations), coordinating extracurricular activities and play dates, providing the sole care while Johnson was away on business, and taking the children to California to visit SooHoo's extended family, all without apparent objection by Johnson. The record further reflects that the children referred to SooHoo as "mommy," and referred to SooHoo's parents as their grandparents. In the information provided to the children's schools, Johnson listed SooHoo as mother number two and listed the last name of one of the children as Johnson–SooHoo. SooHoo attended the children's parent-teacher conferences with Johnson, during which both women signed off on the teacher's goal setting report as "Parent/Guardian."

The relationship between Johnson and SooHoo dissolved after a domestic incident that resulted in reciprocal orders for protection. The district court order against SooHoo barred SooHoo from residing at or visiting the home she owned with Johnson. During the five or six months after the court issued the reciprocal orders for protection, SooHoo was allowed to see the children for a total of only 48 hours.

In late 2003, SooHoo filed a petition seeking sole physical and legal custody of the children. In the alternative, she sought visitation. Under chapter 257C, only de facto custodians and interested third parties (as defined in section 257C.01, subdivisions 2 and 3 (2006)) have standing to petition for custody. Accordingly, the district court first addressed SooHoo's petition for custody by conducting an evidentiary hearing to determine whether SooHoo had standing under chapter 257C to pursue custodial rights. The court found that SooHoo was an interested third party under the statute and ordered the Hennepin County Department of Court Services (court services) to perform a custody and parenting time evaluation.

The court also ordered temporary visitation for SooHoo.

After further evidentiary hearings, during which the district court heard testimony from SooHoo and Johnson, several of their acquaintances, and the court services evaluator who conducted the custody and parenting time evaluation, the court denied SooHoo's custody petition. In its order denying the custody petition, the court ordered Johnson and SooHoo to submit proposed visitation schedules. Johnson submitted a memorandum along with her proposed visitation schedule in which she urged the court to halt temporary visitation and argued that court-ordered visitation would violate her due process rights as a fit parent. Ultimately, the court awarded SooHoo visitation, which, in addition to weekly visitation, included a holiday visitation schedule that divided the major holidays between SooHoo and Johnson and an extended period of visitation during the summer months. The court also ordered that SooHoo employ a therapist to address her differential attention to the children and that Johnson "employ a counselor (or continue with existing counseling) to address her tension and anxiety relative to the [children]." In awarding visitation, the court concluded that Minn. Stat. § 257C.08, subd. 4, withstood constitutional muster. The court of appeals affirmed. *Soohoo v. Johnson*, A05–537, 2006 WL 851808 (Minn.App. Apr. 4, 2006), *rev. granted* (Minn. June 20, 2006).

I.

■ Johnson first challenges the constitutionality of Minn.Stat. § 257C.08, subd. 4, arguing that it violates her right to due process. Section 257C.08, subdivision 4, provides that a third party (excluding foster parents), who resided in a household with a child for two or more years but no longer resides with the child, may petition

the court for an order granting reasonable visitation with the child. Before a court may grant visitation, the statute requires it to determine: (1) that visitation with the third party would be in the child's best interest; (2) that the third party and the child have established "emotional ties creating a parent and child relationship"; and (3) that granting the third-party visitation would not interfere with the relationship between the custodial parent and the child. Minn.Stat. § 257C.08, subd. 4(1)-(3).

■ The U.S. Supreme Court has explained that the substantive due process rights provided by the Fourteenth Amendment afford "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). A parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Johnson contends that section 257C.08, subdivision 4, is unconstitutional on its face and as applied in this case because it violates her rights as a fit parent to decide the care, custody, and control of her children.

In *Troxel*, the Supreme Court struck down as unconstitutional a Washington statute that granted "[a]ny person" standing to petition for visitation at "any time" so long as visitation was in the best interests of the child. *Troxel*, 530 U.S. at 61, 73, 120 S.Ct. 2054 (quoting Wash. Rev. Code. § 26.10.160(3) (1994)). The case came to the Court from the Washington Supreme Court, which held the statute unconstitutional and based its holding on its conclusion that the U.S. Constitution allows states to interfere with the due process rights of parents to raise their children only when it is necessary to prevent harm to the child. *Id.* at 63, 120 S.Ct. 2054. Additionally, the Washington Supreme Court reasoned that the Washington statute swept too broadly because it allowed any person to petition for court-ordered visitation at any time with the only requirement being that visitation be in the best interests of the child. *Id.*

A four Justice plurality affirmed the judgment but issued a substantially narrower holding than the Washington Supreme Court. The Supreme Court declared the Washington statute unconstitutional as applied but declined to address whether third-party visitation statutes are per se unconstitutional. *Id.* at 73, 120 S.Ct. 2054. The Court explained:

> Because we rest our decision on the sweeping breadth of [the Washington statute] and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with Justice KENNEDY that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care."

*Id.* (quoting *id.* at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting)). In addition, the Court set out three guiding principles necessary for a third-party visitation statute to survive a constitutional challenge:

(1) the statute must give some special weight to the fit custodial parent's decision regarding visitation; (2) there can be no presumption in favor of awarding visitation; and (3) the court must assert more than a mere best-interest analysis in support of its decision to override the fit parent's wishes. *Id.* at 69–70, 120 S.Ct. 2054. These guiding principles ensure that third-party visitation statutes are narrowly tailored to the governmental interest in protecting the general welfare of children.

▮ The constitutionality of a statute is a question of law that we review de novo. *Hamilton v. Com'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999). Our power to "declare a law unconstitutional is to be exercised only when absolutely necessary in the particular case and then with great caution." *Grobe v. Oak Ctr. Creamery Co.,* 262 Minn. 60, 61, 113 N.W.2d 458, 459 (1962) (internal quotation marks omitted). We presume that, in enacting section 257C.08, the legislature did not intend to violate either the U.S. Constitution or the Minnesota Constitution. Minn.Stat. § 645.17 (2006). Accordingly, we will uphold a statute unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt. *Hamilton,* 600 N.W.2d at 722.

▮ Johnson first contends that third-party visitation statutes like section 257C.08, subdivision 4, are unconstitutional per se because they fail to give proper deference to a fit parent's decision regarding visitation. A facial challenge to the constitutionality of a statute requires a showing that " 'no set of circumstances exists under which the Act would be valid.' " *Ohio v. Akron Ctr. for Reprod. Health,* 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (quoting *Webster v.*

*Reprod. Health Serv.,* 492 U.S. 490, 524, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (O'Connor, J., concurring)). But the Supreme Court in *Troxel* declined to hold that third-party visitation statutes are per se unconstitutional. *Troxel,* 530 U.S. at 73, 120 S.Ct. 2054. And we believe that in expressly declining to hold that third-party visitation statutes are per se unconstitutional, the Court recognized that there may be instances when the state may constitutionally intrude upon a fit parent's right to the care, custody, and control of the parent's child and order visitation against the parent's wishes. *Id.* We believe such is the case with section 257C.08, subdivision 4, and we reject Johnson's argument on this point.

▮ We therefore turn to an analysis of the language of the statute. As a preliminary matter, we note that the Supreme Court in *Troxel* did not articulate the standard of review to be applied when reviewing third-party visitation statutes; we conclude that the appropriate standard in this case is strict scrutiny.[1] Strict scrutiny is the appropriate standard of review when fundamental rights are at issue and, as we noted above, the Court has declared that a parent's right to make decisions concerning the care, custody, and control of his or her children is a protected fundamental right. *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054; *see Wisconsin v. Yoder,* 406 U.S. 205, 220–21, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (applying strict scrutiny when parent's fundamental right to the care, custody, and control of their children was implicated).

▮ In order to survive strict scrutiny, a law must advance a compelling state interest and must be narrowly tailored to further that interest. *See Kahn v.*

---

1. To the extent the court of appeals applied intermediate scrutiny in *In re Santoro,* 578 N.W.2d 369, 376 (Minn.App.1998) (granting

visitation rights to grandparents), it is overruled.

*Griffin,* 701 N.W.2d 815, 831 (Minn.2005) (citing *Bernal v. Fainter,* 467 U.S. 216, 219, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984)). As to the first prong of the strict scrutiny analysis, Johnson asserts that the state "does not have a compelling interest in second guessing the determinations of a fit-parent as to what is in the best interest of her children." Johnson centers this argument on her fundamental right to the care, custody, and control of her children. That right, however, is not absolute. The Supreme Court has long recognized that states may intrude on parental rights in order to protect the "general interest in the youth's well being." *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). The Court explained in *Prince* that

> the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. * * * [T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare.

*Id.* at 166–67, 64 S.Ct. 438 (footnotes omitted). The Court has also explained that "the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection." *Lehr v. Robertson,* 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). It follows then, that a state, in its role as parens patriae, has a compelling interest in promoting relationships among those in recognized family units (for example, the relationship between a child and someone in loco parentis to that child) in order to protect the general welfare of children. *See, e.g., London Guar. & Accident Co. v. Smith,* 242 Minn. 211, 217, 64 N.W.2d 781, 785 (1954) (extending parental immunity to a stepfather who was in loco parentis and explaining that to do otherwise would be contrary to public policy in that it would "discourage a stepfather from voluntarily assuming the unselfish, *in loco parentis* position to a child in need of parental care").

We turn next to whether the requirements of section 257C.08, subdivision 4, are narrowly drawn to further the state's compelling interest. Initially, we note that section 257C.08, subdivision 4, is, on its face, more narrowly drawn than the Washington statute at issue in *Troxel.* The Washington statute allowed courts to award visitation to any person at any time so long as it was in the child's best interests. In contrast, section 257C.08, subdivision 4, limits the class of individuals who may petition for visitation to those persons who have resided with the child for two years or more (excluding foster parents). In addition to that threshold requirement, the statute further narrows the class of those who may be awarded visitation to petitioners who have "established emotional ties creating a parent and child relationship." Minn.Stat. § 257C.08, subd. 4(2). We read this requirement as mandating that the petitioner stand in loco parentis with the child. As we have previously explained:

> The term "in loco parentis," according to its generally accepted common-law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption and embodies the two ideas of assuming the parental status and discharging the parental duties.

*London Guar. & Accident Co.,* 242 Minn. at 215, 64 N.W.2d at 784 (internal quotation marks omitted). Therefore, unlike the statute at issue in *Troxel,* the requirements that the petitioner have resided with the child for two or more years and have a parent-child relationship with the child substantially limits the class of indi-

viduals who may successfully petition for visitation. Section 257C.08, subdivision 4, is further narrowly tailored by providing that before a court may order visitation, the court must find that visitation is in the best interests of the child and that visitation will not interfere with the custodial parent's relationship with the child.

■ But section 257C.08, subdivision 4, does not specify the level of proof required or who bears the burden of proving the requirements of section 257C.08, subdivision 4. We believe that in order to afford due deference to the fit custodial parent, the burden of proof must be on the party seeking visitation, and the standard of proof must be clear and convincing evidence. We base this conclusion on the following analysis. The Supreme Court has explained that "the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer,* 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The balancing test set forth by the Court in *Mathews v. Eldridge* guides our determination regarding the minimum standard of proof required in these cases. 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see Santosky,* 455 U.S. at 754, 102 S.Ct. 1388. That balancing test requires us to weigh: (1) "the private interests affected by the proceeding"; (2) "the risk of error created by the State's chosen procedure"; and (3) "the countervailing governmental interest supporting use of the challenged procedure." *Santosky,* 455 U.S. at 754, 102 S.Ct. 1388.

Looking at the first *Mathews* factor, the Supreme Court has explained that the clear and convincing evidentiary standard is mandated when the individual interests in the proceeding are " 'particularly impor-

tant' " and " 'more substantial than mere loss of money.' " *Id.* at 756, 102 S.Ct. 1388 (quoting *Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). The Court has specifically explained that a parent's right to the care, custody, and control of his or her child is "an interest far more precious than any property right." *Id.* at 758–59, 102 S.Ct. 1388. We have also observed that parents have a fundamental right to the care, custody, and control of their children that should not be interfered with except for " 'grave and weighty reasons.' " *In re Welfare of Children of Coats,* 633 N.W.2d 505, 514 (Minn. 2001) (quoting *In re Welfare of H.G.B.,* 306 N.W.2d 821, 825 (Minn.1981)).

As for the second factor, the Supreme Court has explained that proceedings that "employ imprecise substantive standards that leave determinations unusually open to subjective values of the judge" magnify the risk for erroneous deprivation of private interests. *Santosky,* 455 U.S. at 762, 102 S.Ct. 1388. Section 257C.08, subdivision 4, requires the district court to make subjective determinations regarding what is in the best interests of the child, whether the petitioner and child established a parent-child relationship, and whether visitation would interfere with the parental relationship. As explained in *Troxel,* one of the dangers of utilizing a best-interest analysis is the potential for a court to make the decision based entirely on the court's subjective estimation without regard to the fit parent's wishes. *Troxel,* 530 U.S. at 67, 120 S.Ct. 2054.

Finally, the government interest in this case under the third *Mathews* factor is the state's interest as parens patriae in the welfare of the child. As we have already explained, the state's interest as parens patriae in the welfare of the child and in promoting relationships among recognized family units is compelling.

Balancing the interests involved in a petition for third-party visitation, we conclude that requiring the party seeking visitation to prove the requirements of subdivision 4 by clear and convincing evidence is necessary to protect against the risk of erroneously depriving a parent of his or her interest in the care, custody, and control of his or her children. Therefore, we must strike Minn.Stat. § 257C.08, subd. 7 (2006), as unconstitutional.[2] Subdivision 7 requires the district court to grant third-party visitation unless the court finds by a preponderance of the evidence after a hearing that visitation would interfere with the custodial parent's relationship with the child. We read the plain language of subdivision 7 as impermissibly placing the burden on the custodial parent to prove that visitation would interfere with the parent-child relationship. The parent's fundamental right to the care, custody, and control of his or her child carries with it the presumption that the parent is acting in the best interest of the child and requires deference to the parent's wishes. *Troxel*, 530 U.S. at 70, 120 S.Ct. 2054. Accordingly, placing the burden on the parent to prove no interference violates that fundamental right. Further, subdivision 7's preponderance of the evidence standard is not sufficient to protect parents against the risk of an erroneous deprivation of their parental rights.

Because Minn.Stat. § 257C.08, subd. 4, limits the class of individuals who may be granted third-party visitation to those who have a longstanding parent-child relationship with the child and prohibits the district court from granting visitation if the visitation is not in the child's best interest or interferes with the custodial parent's relationship, and because we conclude that the petitioner has the burden of proof by clear and convincing evidence, we also conclude that it is narrowly drawn to the state's compelling interest in protecting the general welfare of children by preserving the relationships of recognized family units.[3] We therefore hold that Minn.Stat. § 257C.08, subd. 4, is not unconstitutional on its face.

Turning then to the district court's application of section 257C.08, subdivision 4, to the facts in this case, we reject Johnson's as-applied challenge to the constitutionality of section 257C.08, subdivision 4. In order to make this determination, we look first at whether the court applied the legal framework set forth in section 257C.08, subdivision 4. If so, we then must determine whether the circumstances of this case are such that the Con-

**2.** Subd. 7. Establishment of interference with parent and child relationship. The court may not deny visitation rights under this section based on allegations that the visitation rights would interfere with the relationship between the custodial parent and the child unless after a hearing the court determines by a preponderance of the evidence that interference would occur.

Minn.Stat. § 257C.08, subd. 7.

**3.** Our holding is consistent with what other state supreme courts have concluded regarding statutes similar to Minn.Stat. § 257C.08, subd. 4. *See, e.g., Rideout v. Riendeau,* 761 A.2d 291, 298–99, 302, 303 (Me.2000) (upholding the constitutionality of a grandparent visitation statute with the following require-

ments: (1) the requirement that the grandparent establish standing to petition for visitation by demonstrating that he or she acted as a quasi-parent to the child; (2) the requirement that the court consider any objection of the parent concerning visitation; and (3) the requirement that the court deny visitation if it finds that visitation would significantly interfere with any parent-child relationship or with the parent's rightful authority over the child); *West Virginia ex rel. Brandon v. Moats,* 209 W.Va. 752, 551 S.E.2d 674, 684–85 (2001) (upholding the constitutionality of a grandparent visitation statute that requires the petitioner to establish standing, that visitation be in the best interest of the child, and that visitation not interfere with the parent's relationship with the child).

stitution requires a more rigorous legal framework. *See Troxel,* 530 U.S. at 68, 120 S.Ct. 2054 (noting that the trial court's order "was not founded on any special factors that might justify the State's interference" with the parent's fundamental rights).

Here, the district court applied the legal framework set forth in section 257C.08, subdivision 4, which we have just held to be constitutional on its face. The court awarded visitation after finding that SooHoo resided with the children for more than two years, that SooHoo was in loco parentis with the children, and that SooHoo and the children had developed emotional ties creating a parent-child relationship. The court then determined that visitation with SooHoo was in the children's best interest after giving special weight to Johnson's wishes regarding visitation. Finally, the court determined that granting visitation with SooHoo would not interfere with Johnson's relationship with the children. Although the court stated, presumably based on the language of subdivision 7, that the burden of proof on this element rested with Johnson, the court went on to explain that regardless of who bore the burden of proof, the evidence in the record strongly demonstrated that visitation with SooHoo would not interfere with Johnson's relationship with her children. Having concluded that SooHoo carried her burden of proving all the elements required under section 257C.08, subdivision 4, the court awarded a visitation schedule that it deemed reasonable in light of the circumstances of the case and the relationship between SooHoo and the children.

Because we conclude that the district court applied the correct legal framework, we next look at whether the facts of this case are such that section 257C.08, subdivision 4, cannot be constitutionally applied to Johnson. Johnson has not identified, and we have not found, any facts in this case that support a holding that section 257C.08, subdivision 4, was unconstitutionally applied to Johnson. Accordingly, we conclude that the court's application of section 257C.08, subdivision 4, was constitutional and, therefore, we reject Johnson's argument that section 257C.08, subdivision 4, is unconstitutional as applied to her.

## II.

■ We next address Johnson's argument that the district court abused its discretion in the amount of visitation it awarded SooHoo. Johnson's primary argument is that the amount of visitation is unreasonable because it is commensurate with that which a court would award a noncustodial parent. She also argues that the amount of visitation is not reasonable because it interferes with her parental relationship with her children.

■ The district court enjoys broad discretion in determining visitation. *Olson v. Olson,* 534 N.W.2d 547, 550 (Minn.1995). When reviewing visitation determinations for an abuse of discretion, we must determine whether the court made findings unsupported by the evidence or improperly applied the law. *See id.* Accordingly, we will not reverse the court's findings unless they are clearly erroneous. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985). A finding is clearly erroneous if we are left with the definite and firm conviction that the court made a mistake. *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999). We review the court's findings in a light most favorable to those findings. *See Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999).

Although Johnson forcefully argues that the amount of visitation awarded is unreasonable because it is commensurate with that which would be awarded to a noncustodial parent, Johnson cites no authority,

nor have we found any authority, for the proposition that an award of visitation to a third party that is commensurate with what would be awarded to noncustodial parents is inherently unreasonable.

Minnesota Statutes § 257C.08, subd. 4, allows the district court to grant reasonable visitation. Generally, the reasonableness of an award of visitation turns on the specific facts and circumstances of each case. The district court, having heard the witnesses, is in the best position to determine what is reasonable under the circumstances. Given the evidence presented in the record before us, and the court's broad discretion, we are not in a position to say, based on our standard of review, that the court's findings are clearly erroneous or that the court abused its discretion. Here, the court carefully reviewed the applicable law and then applied that law to the facts contained in the record. As for Johnson's argument that the visitation award is unreasonable because it interferes with her parental relationship with the children, it is enough to say, as discussed above, that the visitation awarded does not interfere with Johnson's parental relationship. Therefore, we affirm the court's visitation award.

### III.

■ Johnson next asserts that the district court erred in ordering visitation without first holding an evidentiary hearing. Chapter 257C does not require a district court to conduct an evidentiary hearing dealing solely with the issue of visitation in order for the court to grant visitation. Here, the court considered the court services evaluation, testimony from several evidentiary hearings (including testimony from SooHoo, Johnson, and others), and additional evidence such as official school documents and affidavits submitted by the parties. We believe this evidence provided a sufficient basis for the court to make a determination regarding reasonable visitation. Accordingly, we conclude that the court did not err in declining to conduct an evidentiary hearing exclusively dedicated to the issue of visitation.

### IV.

■ Johnson challenges the district court's order requiring her to "employ a counselor (or continue with existing counseling) to address her tension and anxiety relative to the girls" and the discretion awarded by the court to SooHoo's therapist to determine "whether either child or both needs to accompany [SooHoo] to therapy."[4] The court found that "the children's therapy needs represents an aspect of their health care that is unlikely to be met without court involvement" and we will not disturb the court's finding. But we conclude that the court abused its discretion in ordering Johnson to counseling in the absence of a factual finding that such counseling is in the best interests of the children as opposed to Johnson. We therefore reverse that portion of the district court's order.

Affirmed in part, reversed in part.

ANDERSON, G. BARRY, Justice (concurring).

I concur in the opinion of the court but write separately to note concerns with respect to whether the district court abused its discretion in the amount and character of visitation awarded to respondent.

Appellant correctly notes that third-party visitation rights are governed by Minn.

---

4.  The district court also ordered SooHoo to counseling, but SooHoo has not challenged that aspect of the district court's order.

Stat. § 257C.08 subd. 4, and SooHoo is entitled to visitation only to the extent that visitation is in the best interest of the children and does not interfere with the custodial parent's relationship with her children. In that context, a reflexive award of visitation to a third party that mirrors an award of visitation more typically granted to a non-custodial parent might very well constitute an abuse of discretion. Given the importance of holiday events to parent-child relationships, alternating holiday arrangements are particularly problematic in visitation awards under the third-party visitation statute.

That said, here, I am persuaded by the unique facts before us, and the detailed and thorough findings and conclusions of the district court, that there was no abuse of discretion in the visitation award.