VIGIL, Judge (dissenting). {42} The majority holds that the UPA does not apply to this case, and I agree. The majority also holds that Petitioner has standing to seek visitation with the child, and I again agree. However, the majority holds that Petitioner has no standing to seek a declaration of parenthood or legal custody of the child. I cannot agree with this conclusion because this may result in the permanent severance of a parent-child bond. Without standing, Petitioner has no right to prove the allegations of the petition that, indeed, a parent-child bond has formed between her and the child she helped raise from infancy for nine years. {43} The child is helpless with the most to lose in this case: a loving, nurturing parent. Petitioner asks for her day in court where she can seek to have her rights and duties as a parent of the child confirmed. In concluding Petitioner has no standing to be heard, the majority negates years of jurisprudence which recognizes the realities of a parent-child relationship, and the child’s interest in her right to a parent. STANDARD OF REVIEW {44} I emphasize that the case is before us following a district court dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 1 — 012(B)(6). “In reviewing the district court’s decision to dismiss for failure to state a claim, we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint’s sufficiency. A Rule 12(B)(6) motion is only proper when it appears that [the] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim.” N.M. Pub. Sch. Ins. Auth., 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342 (internal quotation marks and citation omitted). FACTUAL ALLEGATIONS {45} The allegations contained in the petition are under oath. Petitioner desires to have the rights afforded to a parent, and she is willing to take the responsibility of supporting the child. Petitioner states that the parties were in a committed domestic relationship for fifteen years, from August 1993, until August 2008. During their domestic relationship, Petitioner and Respondent both went to Russia to adopt the child. However, Petitioner did not legally adopt the child because Respondent told her “that there would be prejudice on the part of the Russian adoption agencies both because of same sex parents and racial prejudice.” Thus, Respondent adopted the child. The adoption took place in March 2000, when the child was thirteen months old. {46} Petitioner further alleges that “[s]inee the adoption of the child and until the parties’ separation, both parties have raised the child and have fully participated in parenting her. Both parties have held and continue to hold themselves out as parents of the child.” Petitioner adds that she has provided for the physical, emotional, and social needs of the child; that since the adoption of the child to the present, Petitioner performed a substantial share of the care taking functions for the minor child and assumed a parental role by tending to the child’s physical, emotional, and social needs on a day-today basis; that as a result, a parent-child bond was formed between Petitioner and the child; and that Petitioner and the child mutually acknowledge a parent and child relationship. {47} Petitioner adds that Petitioner’s relationship with the child began with the consent of the Respondent; that Petitioner has shared physical custody of the child for an extended period of nine years; that Respondent cooperated in the development of the parent-child relationship between Petitioner and the child; that Respondent held Petitioner out as the child’s parent, and consented to and accepted Petitioner holding herself out as such; and that Respondent assured Petitioner, through direct communications as well as through her conduct, that Petitioner would remain the child’s parent. {48} Petitioner contends Respondent is “estopped from denying Petitioner’s status as the child’s parent,” and Petitioner “is the equitable parent of the minor child, and as such is entitled to relief, including but not limited to the affirmation of Petitioner’s parental rights by virtue of equitable estoppel.” Petitioner asserts, “[i]t is in the best interests of the child that the Petitioner’s rights as a parent be affirmed under the equitable parent or de facto parent theory, and that the established security and stability of the parent-child relationship between the child and the Petitioner be maintained.” Accordingly, Petitioner asks the district court to order that she “be declared a legal parent of the minor child”; that “both parties be ordered to contribute to the support of the minor child”; that “the court determine custody and timesharing”; and that the court grant other additional relief, consistent with the foregoing. {49} In my opinion, we must reverse the district court order of dismissal for three reasons. First, Section 40-4-9.1(K) does not apply to the factual scenario presented to us in this case. Secondly, even if Section 40-4-9.1(K) applies, the facts set forth in the petition constitute “extraordinary circumstances” under existing ease law to take the case out of the purview of Section 40-4-9.1(E). Thirdly, accepting the allegations of the petition as true, New Mexico common law grants Petitioner standing in this case. I discuss each of these points below. SECTION 40-4-9.KK) DOES NOT APPLY {50} The majority opinion relies almost exclusively on Section 40-4-9.1(E) to conclude that Petitioner has no standing to bring her custody claim, even though Petitioner places no reliance on this statute whatsoever in seeking to affirm the district court. Waiver rules aside, because the district court relied on this statute in dismissing the petition, and because the majority opinion relies so heavily on the statute, I also address this statute. {51} When the Legislature enacted this statute, it did not have the factual scenario before us in mind. Instead, the Legislature clearly and unambiguously expressed its intent that the statute only applies within the context of a dissolution of marriage between a husband and wife or a proceeding for the disposition of children between a husband and wife without a dissolution of marriage. I therefore conclude that Section 40-4-9.1(E) does not apply to the facts before us in this case. {52} Sections 40-4-1 to -20 are codified by the Compilation Commission in Chapter 40, Article 4. Article 4 is entitled “Dissolution of Marriage.” The original statutes were codified in Chapter 22, Article 7 of the 1953 Compilation, and Article 7 was entitled “Divorce and Separation.” Chapter 319, Sections 1-14 of New Mexico Laws of 1973, repealing and amending Sections 22-7-1 to - 22 of the 1953 Compilation. When the 1978 Compilation came into effect, these statutes were placed under Chapter 40, Article 4, which is entitled “Dissolution of Marriage.” Thus, since 1973, with the passage of Chapter 319, Sections 1-14 of New Mexico Laws of 1973, and subsequent amendments, all of the statutes in Chapter 40, Article 4 fall under “Dissolution of Marriage.” Section 1 (Section 40-4-1) states the grounds upon which a dissolution of marriage may be decreed; Section 2 (Section 40-4-2) defines incompatibility as a basis for granting a dissolution of marriage; and Section 3 (Section 40-4-3) provides that when the “husband and wife” have permanently separated and no longer live together as “husband and wife,” then “either may institute proceedings in the district court for a division of property, disposition of children or alimony, without asking for or obtaining in the proceedings, a dissolution of marriage.” (Emphasis added.) Section 4 (40-4-4) then provides for venue in “[a]ny proceeding for the dissolution of marriage, division of property, disposition of children or alimony, as provided for in this chapter[.]” (Emphasis added.) The remaining provisions in Article 4, “Dissolution of Marriage” all expressly relate to proceedings between a husband and wife, their children, and their property. See Sections 40-4-5 to - 9; 40-4-10 to-20. {53} In 1981, within the foregoing context, the Legislature enacted “A new Section 40-4-9.1 NMSA 1978[.]” Chapter 12, Section 1, New Mexico Laws of 1981. With this statute, the Legislature for the first time expressed its preference that in a dissolution of marriage case or a proceeding between a husband and wife for a “disposition of children” without a dissolution of marriage as provided in Section 40-4-3, joint custody is preferred. Importantly, the Legislature specifically directed that this new statute be placed with the statutes dealing with “Dissolution of Marriage” under Chapter 40, Article 4. { 54} The present version of Section 40-4-9.1 was originally enacted by Chapter 41, Section 1 of New Mexico Laws of 1986. Section 1 of the Session Laws directs, “Section 40 — 1-9.1 NMSA 1978 (being Laws 1981, Chapter 112, Section 1) is repealed and a new Section fO-lp-9.1 NMSA 1978 is enacted to read[J” (Emphasis added.) Thus, in 1986, the Legislature reiterated the direction it gave in 1981 that this joint custody statute be placed with the statutes dealing with “Dissolution of Marriage” under Chapter 40, Article 4. {55} The overall structure of Section 40-4-9.1 also demonstrates that it relates to children of a husband and wife in the context of a dissolution of marriage case or a proceeding between a husband and wife for the disposition of children without a dissolution of marriage. I now refer to the specific subsections of Section 40-4-9.1. Subsection B addresses factors which are to be considered in determining whether to award a joint custody and it specifically refers to the parents of the children. It does so by reference to “each parent” and “both parents.” The remaining Subsections (C) through (J) follow the same pattern in referring to parents and their children and how to make a determination of joint custody. Within this context, Subsection (K) refers to “any person other than a natural or adoptive parent” who seeks custody. This subsection harmonizes with the remaining subsections and statutes in that it addresses when a person other than a parent of the children seeks custody of a child within the context of a dissolution of marriage ease or a proceeding for “disposition of children” without a dissolution of marriage. To read Subsection (K) as proposed in the majority opinion makes Subsection (K) apply to a circumstance which the Legislature did not envision, did not address, and did not provide for. The 1999 amendment to Section 40-4-9.1 does not alter this conclusion. {56} Again, the Legislature specifically directed that its preference for joint custody as set forth in Section 40-4-9.1 applies to the disposition of children in a dissolution of marriage action between a husband and wife or a proceeding between a husband and wife for the disposition of their children without a dissolution of marriage. The Legislature specifically directed that this statute be placed in Article 4 which addresses “Dissolution of Marriage.” The ease before us is clearly not a dissolution of marriage case or a ease between a husband and wife for disposition of children without a dissolution of marriage. {57} Cases from other states indicate that when legislatures have considered circumstances such as those before us in this case, they have responded. See In re E.L.M.C., 100 P.3d 546, 555-56 (Colo.App.2004) (applying a statute granting standing to seek parental decision-making responsibilities to a person other than a parent who had been in physical care of the child for six months or more to a same sex partner where the other partner adopted a six-month-old child under China law, and both partners parented the child during their seven-year relationship); SooHoo v. Johnson, 731 N.W.2d 815, 818, 824 (Minn.2007) (applying a statute granting standing to seek visitation to a person with whom a child has resided for at least two years to the same sex partner of an adoptive mother who adopted children from China who had co-parented the children with the same sex partner); Kulstad v. Maniaci, 2009 MT 326, ¶ 28, 352 Mont. 513, 220 P.3d 595 (applying a statute granting standing to seek a parenting interest where a person has established a parent-child relationship with a child to the same sex partner of an adoptive mother); Mason v. Dwinnell, 190 N.C.App. 209, 660 S.E.2d 58, 65 (2008) (applying a statute granting standing to a non-parent to seek custody of a child where a parent-child relationship has developed to a same sex couple). Our own Legislature has not yet addressed the factual scenario of this case. EXTRAORDINARY CIRCUMSTANCES {58} Even if Section 40-4-9.1(K) somehow applies, the petition sets forth sufficient “extraordinary circumstances” to qualify as an exception to 40-4-9.1(K). See In re Adoption of J.J.B., 119 N.M. at 652, 894 P.2d at 1008 (stating that notwithstanding Section 40-4-9.1(K), under extraordinary circumstances, custody may be awarded to a non-parent over the objections of a parent). {59} In J.J.B., the child was placed in the custody of prospective adoptive parents on January 4,1991. Id. at 641, 894 P.2d at 997. When the adoption was finalized in August 1992, the child had been with the prospective adoptive parents for eighteen months. Id. at 643, 894 P.2d at 999. During this time, the child’s natural father and the adoptive parents were engaged in a custody dispute. Id. Our Supreme Court concluded that the district court erred in terminating the natural father’s parental rights, and the adoption was therefore void. Id. at 650-51, 894 P.2d at 1006-07. However, this did not mean that the father automatically regained custody of the child. “Custody based upon the biological parent-child relationship may be at odds with the best interests of the child. When that happens, the best interests of the child must prevail.” Id. at 652, 894 P.2d at 1008. Our Supreme Court concluded that extraordinary circumstances were present to allow an award of custody of the child to the adoptive parents. Id. at 652-54, 894 P.2d at 1008-10. Petitioner’s status in this case, who alleges she formed a parent-child bond with the child over a period of nine years is at least as strong as the adoptive parents in J.J.B. Since the adoptive parents in J.J.B. had standing to seek custody, Petitioner in this case likewise has standing. {60} In In re Guardianship of Ashleigh R., 2002-NMCA-103, ¶ 15, 132 N.M. 772, 55 P.3d 984, we expressly cited to J.J.B. as recognizing the presence of psychological parents as an extraordinary circumstance. For the reasons stated in the next section of this dissent, the petition alleges that the elements of a psychological parent exist. Other courts agree that the existence of a psychological parent-child relationship constitutes exceptional circumstances. See V.C. v. M.J.B., 163 N.J. 200, 748 A.2d 539, 549-50 (2000) (concluding that former same sex partner who is a psychological parent of a child has standing to seek custody based on “exceptional circumstances”); Clifford K. v. Paul S., 217 W.Va. 625, 619 S.E.2d 138, 157 (2005) (concluding former same sex partner who was psychological parent had standing to intervene in custody proceeding under “exceptional cases” provision of statute). {61} I do not agree that Section 40-4-9.1(K) applies to the facts before us in this case. However, even if it could somehow be construed as applying, I would conclude that “extraordinary circumstances” are present in this case. Since the majority disagrees, I dissent. NEW MEXICO COMMON LAW {62} There being no statute which addresses standing in this case, I now look to the common law to determine whether Petitioner has standing in this case. {63} I begin with Judge A. Joseph Aland’s analysis in In re Guardianship of Victoria R., 2009-NMCA-007, ¶¶ 14-15, 145 N.M. 500, 201 P.3d 169, wherein he discusses substantial and persuasive authority supporting the concept of a psychological parent. After the analysis, Judge Alarid notes, “older New Mexico cases also support recognition of psychological parentage.” Id. ¶ 15. The cases referred to are Cook v. Brownlee, 54 N.M. 227, 230, 220 P.2d 378, 379 (1950) (upholding decision of the trial court finding that the best interests of the child would be served by allowing the teenaged child to remain in the custody of the maternal grandfather following the death of mother rather than returning the child to the father with whom the child was barely acquainted); and Ex parte Pra, 34 N.M. 587, 588, 286 P. 828, 829 (1930) (upholding dismissal of the biological mother’s habeas petition seeking custody of her nine-year-old son following the death of the child’s maternal aunt; noting the evidence that mother had voluntarily delivered the child as an infant to the aunt and uncle, that the aunt and uncle had cared for the child “as if he were their own son,” and that the uncle and the child “have become greatly attached to and love each other as father and child”). {64} Moreover, more recent New Mexico cases support Petitioner’s position. I conclude that A. C. is sufficiently on point. This case also involved a committed domestic relationship between two women, one of whom was the biological mother of the child. The two women lived together for approximately fourteen years before separating. 113 N.M. at 582, 829 P.2d at 661. Seven years prior to the separation, the parties entered into an oral agreement to raise a child as co-parents and the biological mother gave birth to the child who was conceived through artificial insemination. Id. The partner (who was not the biological mother) alleged that after the birth she shared the responsibility of caring for the child; participated in setting up a trust fund for the child’s education, as well as a savings account and life insurance policy for the child’s benefit; and that she shared the financial responsibility for raising the child. Id. The partner filed an action seeking joint legal custody and time sharing. Id. {65} The district court entered an order dismissing the partner’s petition with prejudice after the parties entered into a settlement agreement which provided for dismissal of the action with prejudice. Id. Five months after the dismissal, the partner filed a verified petition to set aside or reopen the case under Rule 1-060(B)(3) NMRA. A.C., 113 N.M. at 582, 829 P.2d at 661. The basis alleged for reopening the case was that the biological mother refused to reduce the agreement to writing. Id. at 583, 829 P.2d at 662. The biological mother responded to the motion to reopen the judgment by moving for summary judgment on grounds that she was fit as a parent and that no legal relationship existed between the child and the partner that would confer upon the partner any rights, privileges, duties, or obligation. Id. The partner responded to the motion for summary judgment asserting that material issues of fact existed about whether the agreements between the parties had been made and whether she was a de facto parent. Id. The district court granted the biological mother’s motion for summary judgment. Id. The district court found there was no valid legal marriage between the parties and that because the partner had not adopted the child, she had no standing or enforceable rights. Id. {66} On appeal, we stated, “[a] determination of [the partner’s] rights depends on her first, establishing a basis for setting aside the order of dismissal and, assuming she is successful in doing so, second, establishing a basis for either shared custody or visitation.” Id. We held that the partner “made a prima facie showing which, if proved, would justify setting aside the dismissal and authorize consideration of her right to continue her relationship with the child.” Id. We first held that if the district court found that an agreement was made and found fraud, misrepresentation, or other conduct on the part of the biological mother, which induced the partner to agree to the dismissal, the district court should then proceed to consider what rights, if any, would be conferred on the partner by reason of any agreements made or actions taken. Id. at 584, 829 P.2d at 663. We discussed authorities addressing the rights of non-traditional parents and related significant issues. After considering those authorities, we concluded, “One in [the partner’s] shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child.” Id. at 586, 829 P.2d at 665. Accordingly, we specifically held, “[t]he [partner] has made a colorable claim of standing to seek enforcement of such claimed rights.” Id. {67} In Bamae, two women lived in California for ten years in a committed relationship during which they both contributed to the upbringing of two children. 1997-NMCA-077, ¶ 1, 123 N.M. 583, 943 P.2d 1036. The partner never legally adopted, or sought to adopt, the children. Nevertheless all four lived together in the same house, excluding brief separations until the partner permanently left the biological mother’s household. Id. ¶ 2. After concluding the action could properly be maintained in New Mexico, id. ¶ 8, we noted A.C. and said, “New Mexico ... has held that a person in a situation similar to [the partner] made a colorable claim of standing to assert a legal right to some type of continuing relationship with a child.” Barnae, 1997-NMCA-077, ¶ 10, 123 N.M. 583, 943 P.2d 1036. {68} Thus, in my opinion, A.C. and Bamae grant Petitioner standing in this case. I therefore also disagree with the analysis of these cases by the majority. Majority Opinion ¶¶ 30-32. The issue before us is not whether Petitioner will prevail on the merits, but whether the assertions she makes in the petition are sufficient to confer standing. I believe they are. {69} The majority does not address what Petitioner must prove to be entitled to relief. In discussing a psychological parenthood relationship, Judge Alarid in In re Guardianship of Victoria R., 2009-NMCA-007, ¶ 14 n. 6, 145 N.M. 500, 201 P.3d 169, refers to the four-part test enunciated in In re E.L.M.C., 100 P.3d at 560: (1) the legal parent consented to and fostered the nonparent’s formation and establishment of a parent-like relationship between the nonparent and the child; (2) the nonparent and the child lived together in the same household; (3) the nonparent assumed obligations of parenthood by taking significant responsibility for the child’s care, education and development, including contributing towards the child’s support, without expectation of financial compensation, and (4) the nonparent has established a parental role sufficient to create with the child a bonded, dependent relationship parental in nature. Other courts have adopted this test. See V.C., 748 A.2d at 554 (concluding that once a third party has been determined to be a psychological parent to a child, she stands in legal parity with the legal parent for custody and visitation issues); Rubano v. DiCenzo, 759 A.2d 959, 974 (R.I.2000) (concluding same sex partner of biological mother had standing to establish a psychological parenthood relationship with the child and thereby enforce the parties’ visitation agreement); In re Custody of H.S.H.-K, 193 Wis.2d 649, 533 N.W.2d 419, 420, 435-36 (1995) (remanding to the trial court for a determination of whether same sex partner of biological mother could prove elements of a psychological parent, and thus obtain visitation); see also The American Law Institute, Principles of the Law of Family Dissolution, § 2.03 (2000) (recognizing and adopting standards for proving a “parent by estoppel” and a “de facto parent”). {70} I would adopt the In re E.L.M.C. test as set forth above. This test preserves the child’s relationship with an adult who has functioned as a parent, thereby serving the child’s best interests; it protects the constitutional rights of legal parents because a psychological relationship can only be fostered with their consent and assistance; and it strictly limits who can qualify as a psychological parent. {71} The majority opinion recognizes that the district court exercises comprehensive equitable powers when dealing with cases involving children. Majority Opinion ¶ 33. Sanders v. Rosenberg, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144. This exercise of comprehensive, plenary equitable power, under the foregoing authorities, grants Petitioner standing to seek to the relief she seeks in her verified petition. Other courts have come to this conclusion under circumstances similar to those in this case. See C.E.W. v. D.E.W., 2004 ME 43, ¶¶ 2, 10, 845 A.2d 1146 (concluding that as a corollary of a court’s equitable jurisdiction to determine a child’s best interests, same sex partner of biological mother had standing to be considered for an award of parental rights and responsibilities as a de facto parent); T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913, 917 (2001) (concluding that where a same sex partner assumed a parental status and assumed parental duties with the biological mother’s consent, the child’s best interests require that the third party be granted standing to litigate whether that relationship should be maintained); In re Parentage of L.B., 155 Wash.2d 679, 122 P.3d 161, 163 (2005) (en banc) (concluding that same sex partner of biological mother who alleged she was a de facto parent had standing to petition for rights and responsibilities of shared parentage under equitable power of the court). Since the majority disagrees, I dissent. CONCLUSION {72} I conclude that Petitioner should be granted her day in court to prove whether she and the child have bonded as parent and child, and whether it is in the best interests of the child for Petitioner to be granted custody. Since the majority disagrees, I dissent.