*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0866**


In re the Matter of:
Jodi Kris Engen, et al., on behalf of themselves
and their grandchildren, J. R. B., J. A. B., and J. E. P., petitioners,
Respondents,

vs.

Ashlee Jo Belisle,
Appellant.


**Filed January 25, 2016
Affirmed
Halbrooks, Judge**


Anoka County District Court
File No. 02-FA-13-2261

Jodi Kris Engen, Anoka, Minnesota (pro se respondent)

James and Audrey Lewis, Coon Rapids, Minnesota (pro se respondents)

Shellie Lundgren, Shellie Lundgren Law Office, Minneapolis, Minnesota (for appellant)


Considered and decided by Peterson, Presiding Judge; Halbrooks, Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's order restoring and modifying respondents' grandparent-visitation time, arguing that the district court's findings are insufficient and unsupported by the evidence. We affirm.

## FACTS

Appellant Ashlee Jo Belisle is the mother of three children who are the subjects of this visitation proceeding. J.E.P. was born November 4, 2012, J.A.B. was born April 27, 2010, and J.R.B. was born May 21, 2005. Respondents Jodi Engen (Belisle's mother) and Audrey and James Lewis (Belisle's grandparents) have been estranged from Belisle for several years.

Respondents petitioned for visitation with Belisle's three children on November 14, 2013, and the district court granted their petition. The district court found that respondents had previously had extensive contact with the children before Belisle unilaterally terminated the relationship. Further, it determined that it would be in the best interests of the children for them to have regular visits with respondents and that the visitation would not interfere with Belisle's parent-child relationship. The district court ordered that respondents have visitation time with the children every other Sunday, with extended hours on Sundays following a holiday. It also awarded respondents visitation for a three-day vacation in the summer. Finally, it ordered that respondents have reasonable phone communication with the children, be able to attend lunches with them at school, and be able to contact the school regarding the children.

During one of the Sunday visits, respondents hosted a birthday party for two-year-old J.E.P. J.E.P.'s father, T.J.P., who was the subject of a then-current domestic-abuse no-contact order (DANCO) that prohibited any contact with Belisle, attended the party. T.J.P. was not legally prohibited from contact with his child, J.E.P., or Belisle's other two children at the time of the birthday party.[1] T.J.P. had court-ordered supervised visitation with J.E.P. that was restricted to Saturdays from 10:00 a.m. to 12:00 p.m. at a FamilyWise supervision center. After learning that T.J.P. attended the party, Belisle moved ex parte for emergency relief to suspend respondents' visitation rights on the ground that respondents had endangered the children by inviting T.J.P. to the birthday party.

The district court granted Belisle's motion pending a hearing. At the hearing, the parties stipulated on the record to the appointment of a guardian ad litem (GAL). The district court directed the GAL to address long-range issues, including respondents' access to the children. In an order dated December 31, 2014, the district court suspended

---

[1] An order for protection (OFP) had also been issued on September 12, 2013 to protect Belisle and the children. The OFP was subsequently dismissed on December 13, 2013, after Belisle submitted an affidavit to the district court recanting her earlier sworn statements. The recanting affidavit included the following statement from Belisle:

> [T.J.P.] did not inflict any physical harm or direct the same towards me or the children. At no time did he ever threaten any of us with violence or other threats of any kind. Most of all, I was never in fear of anything he said or did . . . I was mad at [T.J.P.], and I felt that the best way to get back at him was to get an Order for Protection to keep him from seeing his daughter . . . [T.J.P.] is not a danger to me or any of the children.

3

respondents' visitation rights and continued the case pending the GAL's recommendations.

In his report dated February 12, 2015, the GAL addressed T.J.P.'s attendance at the birthday party. The GAL stated that there were also "several other responsible adults present," noting also that there were no allegations in the district court files related to the OFP or the DANCO that T.J.P. had "harmed or attempted to harm [J.E.P.] or the other children." The GAL concluded that T.J.P.'s presence at the party "did not patently endanger" the children and recommended that respondents' visitation schedule be restored.

Following a hearing, the district court determined that the best interests of the children are served by their continued contact with respondents. The district court restored respondents' visitation with the children but modified the frequency from every other Sunday to every third Sunday from 11:00 a.m. to 4:00 p.m. This appeal follows.

## D E C I S I O N

We review visitation orders for an abuse of discretion. *SooHoo v. Johnson*, 731 N.W.2d 815, 825 (Minn. 2007). When reviewing visitation orders, "we must determine whether the court made findings unsupported by the evidence or improperly applied the law." *Id.* We will not set aside the district court's findings unless they are clearly erroneous. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). "A finding is clearly erroneous if we are left with the definite and firm conviction that the court made a mistake." *SooHoo*, 731 N.W.2d at 825. We do not disturb findings that are supported by reasonable evidence. *Fletcher*, 589 N.W.2d at 101.

Minn. Stat. § 257C.08, subd. 2(a) (2014) addresses grandparent visitation:

> In all proceedings for dissolution, custody, legal separation, annulment, or parentage, after the commencement of the proceeding, or at any time after completion of the proceedings, and continuing during the minority of the child, the court may, upon the request of the parent or grandparent of a party, grant reasonable visitation rights to the unmarried minor child, after dissolution of marriage, legal separation, annulment, or determination of parentage during minority if it finds that: (1) visitation rights would be in the best interests of the child; and (2) such visitation would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

Relying on Minn. Stat. § 518.165, subd. 2a (2014), a statute that addresses the use of GALs in custody determinations, Belisle argues that the district court erred by not ordering the GAL to interview J.R.B., who had been upset by T.J.P.'s presence at the birthday party. But this matter did not involve any determination of custody. In grandparent-visitation cases, the district court does not have to make the same detailed analysis as is required in custody determinations. *In re Santoro*, 594 N.W.2d 174, 178 (Minn. 1999). And although the GAL could have interviewed one or more of the children, he was not required by Minn. Stat. § 518.165, subd. 2a to do so.

Belisle's next issue is that the district court made inadequate findings to support its determination that the "best interests of the children are served by having continued contact with their grandparents." But the district court's decision is well-supported by the record. In response to the specific question that the GAL was asked to address, the GAL concluded that the children were not endangered by T.J.P.'s attendance at the

5

birthday party. The record contains multiple affidavits from Engen that also support the district court's decision. In an affidavit dated October 18, 2013 that was submitted in support of T.J.P.'s petition for custody and parenting time, but contains sworn statements that relate to the instant matter as well, Engen stated:

> 6. I have grave concerns about the well-being of all my grandchildren at this time. My daughter is not in a good place. She has a long history of "episodes" where she runs and disconnects from her family and loved ones. She uses time with the children as a weapon against those she believes have wronged her in some way. I have reason to believe she is using drugs, and I fear she may do something drastic and try to flee the state and keep my grandchildren, and [T.J.P.]'s child, away from the family.

> . . . .

> 8. I do not believe for a second that [T.J.P.] acted upon or exhibited any violence towards [Belisle]. And I know without a doubt in my mind he would never do such towards the children. I do know my daughter though. And I can easily see her setting up a situation and fabricating facts to get her way, or even just to harm another. Again, I don't know what caused the rift between [Belisle] and [T.J.P.], but knowing my daughter, it was some personal slight that she decided [T.J.P.] needed to be punished for.

> 9. Throughout [T.J.P.] and [Belisle]'s relationship we thought of [T.J.P.] as part of the family. He is wonderful with children. [J.R.B.] and [J.A.B.], [Belisle]'s other children, respected him and he really cared for them, even though they were not his own; and he absolutely adored [J.E.P.]. I know [J.E.P.] is still very young, but [T.J.P.] was such a significant part of her life, I cannot imagine what this is doing to her having her father kept away from her.

In an affidavit dated August 22, 2014, Engen made the following statements relevant to our analysis:

6

8.   When [Belisle] gets mad at someone, her control is using her kids as pawns and jerks them out of your life. If [Belisle] doesn't want a relationship with my parents or me that is her choice, however, don't take people away that the kids love. All kids need stability. They shouldn't have to wonder who will be jerked out of their life because their mother is mad at someone. I have seen her do this with each of the kids' three fathers, and now it's happening to us.

9.   Kids need security and stability. [J.R.B.] has already been through 4 schools (one school was enrolled twice). Once she gets close to other kids she is removed from a school due to [Belisle]'s change of residence. Kids also need family. They need to know their great-grandparents, their grandparents, uncles and aunts. Kids need to know they are loved. That is the main reason we have pursued the grandparents visitation – it is to stay in their lives and love them. Those kids have no voices at this point. NOT EVER have we ever talked bad of [Belisle] to those kids. We would never interfere in her parenting. Kids are like little sponges and they learn what they live. We want them just to have a good life and we want to be a part of their life. We went for these grandparents times so [Belisle] wouldn't be allowed to jerk them out of our lives whenever she felt like it. We wanted stability for these kids to let them know we love them and we will always be here for them, no matter what happens around them elsewhere.

The record supports the district court's determination that it is in the children's best interests to have visitation with respondents restored.

Belisle also contends that the district court abused its discretion by failing to make findings with regard to whether visitation with respondents would interfere with her parent-child relationship. The district court addressed this statutory issue in its June 16, 2014 order that granted visitation to respondents. It did not do so in the order on appeal presumably because Belisle framed her argument in her ex parte motion as one seeking modification of respondents' visitation rights based on respondents' invitation to T.J.P. to

7

attend J.E.P.'s birthday party. In her motion, Belisle asked the district court to make a finding that respondents endangered her children. In her affidavit supporting the motion, she requested that the district court find that (1) respondents endangered her children, (2) respondents willfully and knowingly violated a court order, and (3) continued visitation is no longer in the best interests of the children. Further, Belisle's proposed order to the district court included a finding by the district court that respondents endangered her children and willfully and knowingly violated a court order. She did not argue or propose that respondents' actions at the birthday party somehow interfered with her parent-child relationship. Because Belisle did not raise the issue, the district court did not abuse its discretion by not specifically addressing in the context of the motion before it whether a restoration of grandparent visitation would interfere with the parent-child relationship. *See, generally*, *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that a party cannot raise a new issue or a new theory on appeal).

We conclude that the district court properly acted within its discretion by restoring respondents' visitation rights.

**Affirmed.**

8