### In the Matter of the WELFARE OF the CHILDREN OF Deloris COATS.

#### No. CX–99–2142.

Supreme Court of Minnesota.

Aug. 23, 2001.

Rehearing Denied Sept. 27, 2001.

Amy Klobuchar, Hennepin County Attorney, Andrew J. Mitchell, Senior Assistant County Attorney, for appellant.

Leonardo Castro, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, for respondent.

Andrea K. Niemi, John M. Jerabek, Niemi, Barr & Jerabek, P.A., Minneapolis, for guardian ad litem.

## OPINION

LANCASTER, Justice.

In August 1999, appellant Hennepin County Department of Child and Family Services (DCFS) filed a petition seeking termination of respondent Deloris Coats' parental rights to her four children. A pretrial hearing was scheduled for October 12, 1999, and trial was set for November 23, 1999. Although Coats had received notice of the pretrial hearing, she failed to appear. After allowing Coats' attorney to withdraw from representation and after hearing testimony from a child protection worker, the district court terminated Coats' parental rights by default on the merits. The district court denied Coats' subsequent motion to reconsider or, in the alternative, vacate the default judgment. On appeal, the court of appeals held that the default judgment was void because it violated Coats' right to due process. We reverse and reinstate the default judgment of the district court.

Coats is the single mother of O.R., J.R., Q.R., and Z.J. Cornell Robinson is the father of O.R., J.R., and Q.R. There is no father of record for Z.J. On October 6, 1998, DCFS filed a petition alleging that Coats' children were in need of protection or services (CHIPS petition) and the children have been in court-ordered out-of-home placement since then. At the time the petition was filed, the children were between four months and seven years of age.

Following a hearing, the district court found, as Coats admitted, that her history of mental health issues and chemical abuse affected "her children and her ability to care for them"; that "several of her children have special needs"; that "[Coats] will benefit from parenting assistance through Reuben Lindh [Family Services] to help her in addressing and meeting the needs of her children"; and that "[i]t is in the best interests of the children to remain in out-of-home placement until there has been substantial compliance with the case plan ordered herein." Based on these findings, the district court concluded that the children were in need of protection or services and placed them in DCFS's custody. The district court ordered a case plan requiring Coats to: (1) submit to substance-abuse testing to demonstrate sobriety; (2) ensure that the children attend all recommended therapy appointments and follow any recommendations requiring her to participate in their therapy; (3) follow all recommendations for a psychological assessment, including undergoing a psychi-

atric consultation and following any medication recommendations and participating in both group and individual counseling; and (4) participate in an in-home parenting/reunification program with Reuben Lindh Family Services and follow any recommendations from that program.

Review hearings were held on February 3, March 8, April 12, June 2, and June 30, 1999. The district court found at the February 3 review hearing that Coats had not followed her case plan in that she had, among other things, failed to submit to substance-abuse testing as required, failed to attend group or individual therapy, and failed to take part in a psychiatric evaluation. At the March 8 review hearing, the district court permitted Coats' attorney to withdraw pursuant to Coats' request. Although the district court indicated in its written findings from that review hearing that Coats had not been following her case plan "as completely as she should," the district court cited only her failure to meet with Reuben Lindh Family Services. The district court found at the April 12 review hearing that Coats "appears to have made progress on her case plan but sobriety is still an issue." At the June 2 review hearing, the district court found that Coats was not complying with her case plan and that there was possible alcohol or drug use. Finally, the district court found at the June 30 review hearing that Coats continued to fail to comply with her case plan, and specifically noted "dirty" urinalysis results or missed urinalysis tests.

Pursuant to Minn.Stat. § 260.221, subds. 1(b)(2), 1(b)(4)-(5), and 1(b)(7)-(8) (1998),[1] DCFS filed a termination of parental rights petition on August 23, 1999, alleging that termination of the parental rights of Coats, Robinson, and the unknown father of Z.J. was in the children's best interests.

The petition outlined Coats' lengthy history with DCFS: In 1991, a case was opened when DCFS received a report that O.R. was born testing positive for cocaine in her system. In 1992, the case was closed after Coats completed a case plan that included chemical dependency treatment. In 1996, it was reported that O.R. had been sexually abused by three of Coats' acquaintances. This case was also closed when, in April 1997, DCFS determined that Coats had demonstrated the ability to protect her children. Later in September 1997, DCFS opened another case when the Minneapolis Police reported that Coats was not providing food for her children, that their personal hygiene was very poor, and that Coats' apartment was "filthy." While this case was open, O.R. and J.R. were reported for habitual truancy and a report was filed that Coats left her children with a male friend who beat them with a belt. In December 1997, this case was closed. In June 1998, DCFS opened yet another case after a social worker noted that Coats' home was filthy and her children's personal hygiene and clothing were inadequate. This DCFS case was closed when, in October 1998, the children were placed out of home.

On August 24, 1999, Coats appeared pro se at an arraignment hearing on the petition for termination of parental rights. At that hearing, the district court reappointed Coats' former counsel. Another arraignment hearing was held on September 22, 1999, at which both Coats and Robinson appeared and denied the allegations in DCFS's termination petition. The district court found that there was probable cause for the termination petition and scheduled a pretrial hearing for October 12, 1999, and also a trial for November 23, 1999. That same day, Coats and Robinson signed

1. Section 260.221 was repealed in 1999 and recodified at Minn.Stat. § 260C.301 (2000).

Act of May 11, 1999, ch. 139, art. 3, § 29, 1999 Minn. Laws 567, 678–80.

a hearing notice acknowledging that they had received notice of the two dates. The hearing notice read:

> The next hearing in this case is for PreTrial/Trial at 8:30/9:30 o'clock on Oct. 12/Nov. 23, 1999.
>
> The Parent(s) and Child(ren) (12 years of age or over who are participating) are required to appear at Room 231, Juvenile Justice Center, 626 South 6th Street (corner of 6th and Park), Minneapolis, Minnesota, or a JUDGMENT BY DEFAULT MAY BE ENTERED.

On October 12, 1999, the district court convened the pretrial hearing at 9:00 a.m. Although their attorneys were present, neither Coats nor Robinson were present at that time. DCFS moved to proceed by default against Coats and Robinson on the merits of the petition.[2] The district court granted DCFS's motion over the objection of Coats' and Robinson's attorneys.[3] Coats' attorney then moved to withdraw, stating "in light of the lack of contact I've had with my client, I'm not in a position to be able to effectively represent her or oppose the default. I'd ask to withdraw at this point in time." The district court allowed Coats' counsel to withdraw.

After taking judicial notice of its CHIPS order, the district court heard testimony from Clare Fossum, one of the DCFS social workers assigned to Coats' case. Fossum testified that Coats had not addressed her substance-abuse problems or followed through with substance-abuse treatment; that after Coats finally underwent a psychological assessment, she refused to follow the treatment recommendations from that assessment; that to date Coats had not successfully completed a parenting program; that Coats had not participated in the children's therapy and did not have an understanding of their special needs; that Coats had not been willing to discuss the children's special needs with her; and that she was not aware of Coats having contacted the children's therapists to inquire about their needs or the services they were receiving. Fossum also testified about DCFS's efforts to reunite Coats with her children. She testified that there were more visits scheduled between Coats and the children than she had seen in any other case, but that Coats had missed many of them and had canceled a visit that was to have occurred after Coats' last court appearance on September 22. Fossum further testified that Coats was repeatedly offered all of the services outlined in her case plan, and that every month Fossum had encouraged Coats to attend counseling, if for no other reason than to comply with the requirements of the case plan. In addition, Fossum testified that another child services worker and the guardian ad litem expressed concerns about Coats' inability to focus on the children rather than on herself, and Coats' failure to follow through on basic childcare issues such as providing food or responding to their simplest needs. Finally, Fossum testified that, in her opinion, termination of Coats' parental rights to the children was in the children's best interests.

---

**2.** The dissent's reading of the hearing notice Coats signed on September 22, 1999, is that the notice does not require appearance in person but can be read to permit appearance by counsel. We disagree. The notice plainly says "[t]he *Parent(s)* * * * are required to appear" (emphasis added). In any event, Coats has never argued that her attorney's presence satisfied her obligation to appear.

**3.** Robinson arrived before the hearing closed, and the district court vacated the order allowing DCFS to proceed by default against him and reinstated the November 23, 1999, trial date. Robinson's parental rights were subsequently terminated by order filed January 5, 2000.

The district court issued a verbal order terminating Coats' parental rights to the children. On October 29, 1999, Coats filed a motion under Minn. R. Civ. P. 60.02 (2000) asking the district court to reconsider or, alternatively, to vacate the default judgment. In support of this motion, Coats alleged that she "immediately left messages on counsel's voicemail indicat[ing] that she had missed the [pretrial] due to the confusion as to the date caused by a change in medication." The district court denied the motion.

On appeal to the court of appeals, Coats alleged as error both the district court's refusal to grant her Rule 60.02 motion to reconsider or, in the alternative, to vacate the default judgment, and the court's order terminating her parental rights. The court of appeals concluded that the district court's default judgment "did not comply with due process because the termination proceedings exceeded the usual scope of a pretrial hearing, the notice of possible default through failure to appear was ambiguous, and Coats was neither present nor represented by counsel." *In re Welfare of Children of: Delores Coats*, No. CX–99–2142, 2000 WL 944513, *5 (Minn.App. July 11, 2000). As a result, the court of appeals held that the lack of due process rendered the default judgment void, a basis for relief from judgment under Rule 60.02, subd. d, and remanded the matter to the district court for an expedited hearing on the mer-

its of DCFS's termination petition. *Id.* DCFS appealed.

■■■ We turn first to DCFS's argument that the district court did not abuse its discretion in denying Coats' motion to reconsider or vacate the default judgment pursuant to Minn. R. Civ. P. 60.02.[4] Minnesota Rule of Civil Procedure 60.02 permits courts to grant relief from a final judgment, order, or proceeding for certain enumerated reasons such as mistake, inadvertence, surprise, excusable neglect, or "[a]ny other reason justifying relief." Minn. R. Civ. P. 60.02(a), (f). In considering whether to grant relief from a default judgment under Rule 60.02, we require the party seeking relief to demonstrate that: (1) she has a reasonable defense on the merits of the case; (2) she has a reasonable excuse for her failure to act; (3) she acted with due diligence after the notice of entry of the default judgment; and (4) the opposing party will not be substantially prejudiced if the motion to vacate the default judgment is granted. *Nguyen v. State Farm Mut. Auto. Ins. Co.*, 558 N.W.2d 487, 490 (Minn.1997). All four factors must be met to justify granting relief under Rule 60.02. *Nguyen*, 558 N.W.2d at 490. On an appeal from a district court's decision to deny relief under Rule 60.02, we consider whether the district court's decision constituted an abuse of discretion.[5] *Charson v. Temple Israel*, 419 N.W.2d 488, 490 (Minn.1988).

---

**4.** At the time Coats moved the district court to reconsider or vacate the default judgment pursuant to Minn. R. Civ. P. 60.02, the Rules of Juvenile Procedure did not include a rule comparable to Rule 60.02. Since that time, however, Minn. R. Juv. P. 81.02 has been adopted and is basically a counterpart to Minn. R. Civ. P. 60.02. *Compare* Minn. R. Juv. P. 81.02 (2000) (providing that, upon a party's motion, the court may grant relief from a final order or proceeding), *with* Minn. R. Civ. P. 60.02 (providing that, upon a par-

ty's motion, the court may grant relief from a final order, judgment, or proceeding).

**5.** The dissent states that the four-factor analysis used in connection with a Rule 60.02 motion is inapplicable in this case "because the notice Coats received did not comply with due process." In support of its statement, the dissent cites *Lyon Dev. Corp. v. Ricke's Inc.*, 296 Minn. 75, 207 N.W.2d 273 (1973).

*Lyon Development* is readily distinguishable from Coats' case. In *Lyon*, a garnishee argued that a default judgment entered against it

■ In an apparent attempt to assert a defense on the merits of her case, Coats claimed that she "has repeatedly demonstrated interest in the future health and well being of her children by her previous court appearances and her contact with her children." The district court held that Coats failed to demonstrate a reasonable defense on the merits, noting that "[w]hile Ms. Coats has attended previous court hearings and visited her children, these efforts do not establish a reasonable defense on the merits. Ms. Coats simply has not undertaken the hard work necessary to correct the conditions resulting in the children's out-of-home placement * * *."

Coats' proffered defense on the merits is deficient because it is supported by no more than conclusory statements. *Charson*, 419 N.W.2d at 491 ("[T]he existence of a meritorious claim must ordinarily be demonstrated by more than conclusory allegations in moving papers."). Therefore, the district court did not abuse its discretion in rejecting it.

■ Even if we accepted Coats' proffered excuse, however, the record belies her assertions regarding her demonstrated interest in her children and instead reveals a turbulent and consistently neglectful parental relationship. Coats' children were initially removed from the home because Coats' serious mental health and chemical

abuse problems resulted in her being unable to meet the basic needs, including the need for food and physical safety, of the children. During the time the children have been out of her care, Coats has had the benefit of a case plan designed to address her challenges. The plan included many visits with her children—Fossum testified that in her years as a social worker, she had never seen more scheduled visits. However, Coats cancelled or missed many of the scheduled visits. In addition, Coats was provided with mental health and chemical dependency services. She repeatedly refused to participate in therapy sessions and continued to abuse drugs, as shown by repeated positive drug tests. All of this leads us to conclude that the district court did not abuse its discretion in rejecting Coats' claim that she had a reasonable defense on the merits.

■ Coats also did not present a reasonable excuse for her failure to appear at the hearing. Coats' assertion that a medication change caused her confusion regarding the date of the pretrial hearing is unsupported by any evidence or affidavit. Given her history of chemical dependency, history of missing visits with her children, and the lack of any evidence in the record that Coats was taking prescribed medication at the time of the pretrial hearing, the district court did not abuse its discre-

---

violated Rule 15(b) of the District Court Code of Rules. *Lyon Development*, 296 Minn. at 82, 207 N.W.2d at 277. Rule 15(b) required that "[j]udgment against a garnishee shall be entered only upon notice to the garnishee and the defendant * * *." *Id.* The plaintiff in *Lyon* admitted that it had not given to the garnishee the notice required by Rule 15(b), but argued that Rule 15(b) conflicted with the Rules of Civil Procedure and that those rules did not require such notice. *Lyon Development*, 296 Minn. at 82, 207 N.W.2d at 277. We disagreed, holding that Rule 15(b) did not conflict with any civil procedure rule and that the plaintiff was required to provide the no-

tice. We further held that the plaintiff's failure to give the notice "in and of itself is grounds to set aside the default judgment entered against the garnishee"; thus, we did not require the garnishee to show each of the four elements of the Rule 60.02 analysis before vacation of the default judgment. *Lyon Development*, 296 Minn. at 84–85, 207 N.W.2d at 278–79. Unlike the *Lyon* case, in this case Coats did receive a notice. Furthermore, Coats has never complained that the notice was deficient and violated her due process rights. Thus, *Lyon* does not apply here and, as Coats herself recognizes, Rule 60.02 provides the framework for our analysis.

tion in finding that Coats' bald assertion did not provide a reasonable defense for failing to appear. In short, because Coats failed to demonstrate that she had a reasonable defense on the merits or that she had a reasonable excuse for failing to appear at the pretrial hearing, the district court did not abuse its discretion when it refused to vacate or reconsider the default judgment. *Nguyen,* 558 N.W.2d at 490 ("All four of the [Rule 60.02] factors must be satisfied in order to justify relief under the rule.").

■ As a final matter, we address the court of appeals' conclusion that the default judgment was void for lack of due process. Coats never argued to the district court or the court of appeals that she was denied due process.[6] Generally, an appellate court should consider only those issues that were presented and considered by the trial court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). In keeping with this general rule, we have held that "it is proper for an appellate court to decide an issue not raised on appeal only when the reasoning relied upon by the appellate court is neither novel nor questionable. Needless to say, an appellate court should exercise this authority only sparingly." *State v. Glidden,* 455 N.W.2d 744, 746 (Minn.1990).

■ Even if Coats had raised the argument that the default judgment was void for lack of due process and that issue was properly before us, she would not prevail. It is well settled that "where the trial court has jurisdiction of the offense and of the defendant a judgment will be held void for want of due process only where the circumstances surrounding the trial are such as to make it a sham and a pretense

rather than a real judicial proceeding." *State ex rel. Butler v. Swenson,* 243 Minn. 24, 28, 66 N.W.2d 1, 4 (1954). Here, there is no dispute that the district court had both personal and subject-matter jurisdiction. It is also clear that the circumstances surrounding the default judgment against Coats did not constitute a sham or pretense such that the default judgment was void. To the contrary, the record reveals that the court took evidence and was focused on the welfare of four children who were freed for adoption after waiting for over a year in the limbo of foster care while their mother repeatedly failed at the program that would have brought them home. Accordingly, we hold that the default judgment is not void for lack of due process.

Coats' parental rights were not terminated because of a mere technical violation on her part; her rights were terminated because, despite many opportunities and much offered assistance, she refused to correct the conditions that required her children to be placed out of her home. Coats knew when the petition for termination of parental rights was filed in August 1999 that failure to cooperate with the case plan, including visiting her children and getting her drug and alcohol abuse under control, would result in a termination of her parental rights. As it was, Coats failed to show during the entire course of the case plan that she could provide a safe and adequate home for her children.

In summary, we reverse the court of appeals' decision and reinstate the district court's default judgment.

Reversed.

---

6. Coats never complained of the due process violations imagined by the dissent; for instance, she never complained that the notice was ambiguous. The dissent adopts arguments not made, supported by factual assertions for which there is absolutely no support in the record.

PAGE, Justice (dissenting).

## DISSENT

I respectfully dissent. The issue before us is not whether the termination of respondent Deloris Coats' parental rights was justified on the merits. Rather, the issue is whether the district court was justified in terminating her parental rights based on her failure to "appear" at a pretrial hearing. Put another way, was the process fair? I conclude that it was not. Moreover, in reinstating the district court's decision, this court, like the district court below, has treated Deloris Coats' parental rights in a wholly cavalier fashion.

As an initial matter, I am at a complete loss to explain how either the district court or this court can justify their conclusion that Deloris Coats failed to appear at the October 12, 1999, pretrial hearing. On the morning of October 12, 1999, the district court convened the pretrial hearing at 9 a.m. Deloris Coats did not attend, but her attorney was present. Because Deloris Coats was not present, DCFS moved to proceed by default on the merits of the petition. The district court granted DCFS's motion and then proceeded to terminate Deloris Coats' parental rights.

The notice requiring Deloris Coats to appear at the pretrial hearing stated:

The next hearing in this case is for PreTrial/Trial at 8:30/9:30 o'clock on Oct. 12/Nov. 23, 1999.

The Parent(s) and Child(ren) (12 years of age or over who are participating) are required to appear at Room 231, Juvenile Justice Center, 626 South 6th Street (corner of 6th and Park), Minne-

apolis, Minnesota, or a JUDGMENT BY DEFAULT MAY BE ENTERED.

Deloris Coats acknowledges that she received this notice. Applying the common meanings to the words used in the notice, the notice cannot be read to mandate Deloris Coats' personal presence at the pretrial hearing. Clearly, the notice required Deloris Coats to "appear" at the October 12 pretrial hearing. The court asserts that the notice "plainly says '[t]he Parent(s) * * * are required to appear.'" This assertion, however, merely begs the question of what it means to "appear." The court offers no explanation as to what it is about this language or any other language in the notice that would make a person reading it understand that he or she was required to appear personally and not through counsel. Noticeably absent from the notice is any explicit requirement that parents personally appear. Given this absence, the proper recourse is to determine the meaning of "appear." This court has indicated that a party may appear either personally or through counsel.[1] *See Croes v. Handlos,* 225 Minn. 247, 249, 30 N.W.2d 471, 472 (1948) (upholding a default judgment ordered against a defendant for failing to appear at a hearing and noting that a defendant must appear and answer either personally or by counsel). We are not alone. At least two courts addressing the specific issue raised in this case have held that a party to a termination of parental rights proceeding may appear either personally or through counsel. *See In re M.M.,* 708 So.2d 990, 992 (Fla.Dist.Ct.App. 1998) (holding that a trial court's decision, in a termination of parental rights proceeding, to enter a default judgment against parents for failing to "appear" at

---

1. Yet the court's reading of the notice in this case implies that every notice instructing a party to "appear" actually requires a personal appearance by that party. I suspect members of the practicing bar will be surprised to learn that at each court hearing they attended over the years without their client physically present, the client was subject to default for failure to appear.

an adjudicatory hearing as required by the summons for the hearing was improper because they " 'appear[ed]' through their counsel"); *In re Brandon A.*, 769 A.2d 586, 589 (R.I.2001) (defining "an appearance as '[a] coming into court *as party* to a suit, either in person *or* by attorney' ") (quoting *Nisenzon v. Sadowski*, 689 A.2d 1037, 1048 (R.I.1997)). In that we have indicated that a party may appear either personally or through counsel, how is a party to know, absent express language stating so, that they are required to appear in person? The answer is they cannot know.

In light of *Croes* and the fact that Deloris Coats appeared at the pretrial hearing through counsel, there was absolutely no basis for the district court to grant DCFS's motion to proceed by default. Having no basis to proceed by default, the district court had no basis to enter the default judgment terminating Deloris Coats' parental rights. For this reason alone, the court of appeals' decision should be affirmed. Yet this court now reverses the court of appeals.

The district court's entry of the default judgment also violated Deloris Coats' right to due process because of inadequate notice. This due process violation required the district court to grant Deloris Coats' motion to vacate the default judgment under Minn. R. Civ. P. 60.02(f) (stating a court may grant relief for any other reason justifying relief). Notice is "universally recognized as essential to due process." *Juster Bros., Inc. v. Christgau*, 214 Minn. 108, 119, 7 N.W.2d 501, 508 (1943). In affirming the district court's decision denying Deloris Coats' motion to vacate, this court applied the four-factor analysis from cases such as *Nguyen v. State Farm Mu-*

*tual Automobile Insurance Co.*, 558 N.W.2d 487, 490 (Minn.1997), to analyze Deloris Coats' Rule 60.02 motion. Although that test ordinarily provides the framework for evaluating such a motion, its use in this case is inapplicable because the notice Deloris Coats received did not comply with due process. *See Lyon Dev. Corp. v. Ricke's, Inc.*, 296 Minn. 75, 84, 207 N.W.2d 273, 279 (1973) (holding that, for default judgment against a garnishee, failure to give notice of default hearing and obtain court order are "procedural defects of such consequence" that four-factor test for vacating default judgment not applicable).[2]

"It is settled that the nature of due process is flexibility. The amount of process due varies with the circumstances of the case." *In re Welfare of H.G.B.*, 306 N.W.2d 821, 825 (Minn.1981). Accordingly, "the determination of what process is due involves a balancing of the interests involved in the specific case under consideration." *Id.* In this case, the "pivot point from which we start is that the substantial and fundamental rights of parents to the custody and companionship of their children should not be taken from them except for grave and weighty reasons." *Id.* At the same time, it is also true that "[c]hildren are not property, * * * but unique and vulnerable small persons entrusted to the care and protection of parents," *id.*, and that "the law secures parents' right to custody 'only so long as they shall promptly recognize and discharge their corresponding obligations,' " *In re Welfare of P.J.K.*, 369 N.W.2d 286, 290 (Minn.1985) (quoting *H.G.B.*, 306 N.W.2d at 825).

---

**2.** The court attempts to distinguish *Lyon* as involving a complete absence of notice rather than, as Deloris Coats argues, inadequate notice. Noticeably absent, however, is any explanation as to why this so-called distinction alters any aspect of the due process analysis or changes the proper remedy upon a finding of insufficient notice. This is hardly surprising because the distinction put forth is without significance.

The notice in this case is deficient with respect to its language concerning when a default judgment may be entered, as well as the scope of such a default. The notice merely warns that "JUDGMENT BY DEFAULT MAY BE ENTERED" for failure to appear. It does not clearly indicate, however, that this warning applies to the pretrial hearing and not just the trial. Even if it is assumed that the statement can be read to apply to the pretrial hearing, it is not clear that the default referred to would go beyond the matters that were the subject of the pretrial hearing, inasmuch as the logical assumption would be that the default would relate to pretrial issues and not the merits of the termination petition, particularly when the trial date had already been set. Finally, the notice did not notify Deloris Coats that she had to appear at the pretrial hearing in person.[3] In sum, Deloris Coats' failure to personally attend the October 12 pretrial hearing hardly constituted a "grave and weighty" reason justifying the entry of a default judgment on the merits of the termination petition. *H.G.B.*, 306 N.W.2d at 825.

Nor do any of the surrounding circumstances suggest that the "extreme sanction" of a default judgment was warranted in this case. *Hennepin County ex rel. Bartlow v. Brinkman*, 378 N.W.2d 790, 793 (Minn.1985). Deloris Coats had no history of failing to make required court appearances. Nor does the record demonstrate

misconduct on her part during the termination of parental rights proceedings, or suggest that she was unable or unwilling to participate in the proceedings. Rather, the record shows that she had a number of court appearances in both the child protection and termination of parental rights proceedings and attended all of them except the October 12 pretrial hearing. Although she may have failed to attend a number of appointments required under her case plan, those failures go to the merits of the termination petition and not to her compliance with the procedural requirements of the termination proceedings. Further, nothing in the record suggests that DCFS would have suffered any prejudice if the district court had vacated the default judgment against Deloris Coats. The motion to vacate the default judgment was made well before the scheduled November 23 trial date, so DCFS would not have been prejudiced by proceeding to trial at that time. In any event, DCFS needed to appear for the November 23 trial because it still had to proceed on its petition to terminate the parental rights of Cornell Robinson, the biological father of three of Deloris Coats' four children. Given these circumstances, the balance of interests implicated was clearly in Deloris Coats' favor, and more process was due. It is therefore clear that Deloris Coats established "any other reason justifying relief" from the default judgment based on due process.[4] Minn. R. Civ. P. 60.02(f).

---

**3.** The fact that the default judgment was entered against Deloris Coats at the pretrial hearing demonstrates even greater reason to vacate the default judgment than in cases such as *Brandon* and *M.M.* At least the default judgments in those cases were entered at a hearing on the merits rather than at a mere pretrial hearing. *M.M.*, 708 So.2d at 991; *Brandon*, 769 A.2d at 588.

**4.** I note with considerable dismay the court's myopic focus on Deloris Coats' alleged failure

to argue before either the district court or the court of appeals that she was denied due process, that the notice was ambiguous, or that her attorney's presence at the October 12 pretrial hearing satisfied her obligation to "appear." Significantly, however, in her motion to reconsider, Deloris Coats complained of not having an opportunity to present the court with evidence of her commitment to her children or to respond to the allegations against her. The opportunity to be heard is the fundamental due process requirement. *In*

The district court erred both in granting the default judgment against Deloris Coats and in failing to vacate that judgment. Thus, the court of appeals' decision should be affirmed.

Finally, I am compelled to comment on what is alleged to be a common practice in Hennepin County District Court—granting default judgments at pretrial hearings in termination of parental rights cases. It appears that in many cases the only reason for holding such pretrial hearings is to see whether the parents will appear in person as opposed to appearing through counsel and, if not, to enter a default judgment against them on the merits of the termination petition. It also appears to be the practice in Hennepin County District Court to allow attorneys appearing on behalf of parents who are not physically present to withdraw during default proceedings, leaving the parents' rights completely unprotected.

What is more disturbing is the fact that victims of these practices, like Deloris Coats, are likely to be poor people and/or people with chemical dependency or mental health problems. When it comes to due process, these practices treat them as second-class citizens. But their parental rights are no less valuable and should be accorded no less respect than the rights of any other person. I simply cannot imagine that a default judgment on the merits for failure to personally appear at a pretrial hearing attended by their counsel would ever be entered against people who were not poor. This disparity in treatment is irreconcilable with a legal system that purports to dispense equal justice under the law. Nor can I imagine that counsel for parents with financial wherewithal would ever seek to withdraw from their representation in such a situation. These practices are "so offensive to a civilized system of justice that they must be condemned." *State v. Williams*, 535 N.W.2d 277, 287 (Minn.1995). Yet this court condones them and in the process gives truth to the proverb, "the court is most merciful when the accused is most rich."

I am appalled and dismayed, but, more than anything, I am disappointed.

STRINGER, Justice (dissenting).

## DISSENT

I join in the dissent of Justice Page in part. When Coats' attorney appeared at the October 12, 1999, pretrial hearing, I agree that Coats was present by her coun-

---

re *Kirby*, 354 N.W.2d 410, 415 (Minn.1984). Therefore, although inartful, Deloris Coats' assertions were sufficient to preserve a due process claim.

Moreover, while the court's focus on Deloris Coats' alleged failure to argue that the notice was ambiguous and that she appeared at the October 12 pretrial hearing may provide the court some legal comfort, the fact remains that the notice is ambiguous and she did appear. "[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be 'diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities.'" *State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990) (citation omitted). Further, this court may, in its discretion, address issues raised for the first time on appeal "when the interests of justice require their consideration and addressing them would not work an unfair surprise on a party." *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989). This is such a case. The default termination of Deloris Coats' parental rights based on the notice resulted in a callous and unjustifiable violation of those rights. Nor should it be overlooked that this practice has an impact that goes far beyond the family involved in this case. "No oppression is so heavy or lasting as that which is inflicted by the perversion and exorbitance of legal authority." Joseph Addison, available at http://www.cybernation.com/victory/quotations/authors/quotes-addison.joseph.html (last visited Aug. 8, 2001).

sel's representation and the district court erred in permitting her counsel to withdraw and then finding Coats in default; the court erred in failing to vacate the judgment of default. I would therefore affirm the court of appeals.

GILBERT, Justice (dissenting).

### DISSENT

I would affirm for many of the reasons stated in the dissent of Justice Page. I therefore respectfully dissent.