*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1650**
**A14-1669**

In the Matter of the Welfare of the Children of:
N. M. L. and E. R. L., Parents.

**Filed March 30, 2015**
**Affirmed in part and remanded**
**Stoneburner, Judge***

Itasca County District Court
File No. 31-JV-14-1634

Nichole J. Carter, Carter Law Office, PLLC, Cloquet, Minnesota (for appellant N.M.L.)

Darla M. Nubson, Nubson Law Office, PLLC, Grand Rapids, Minnesota (for appellant E.R.L.)

John J. Muhar, Itasca County Attorney, Mary J. Evenhouse, Assistant County Attorney, Grand Rapids, Minnesota (for respondent county)

Kim Allen, Grand Rapids, Minnesota (guardian ad litem)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Stoneburner, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**STONEBURNER**, Judge

When appellant father and appellant mother failed to appear at a pretrial hearing on respondent county's petition to terminate parental rights to their two children, the district court found that the parties were in default. The district court ordered termination of each parent's parental rights, concluding, based on judicially noticed records, that there is clear and convincing evidence that (1) a statutory ground supports the termination of the parental rights of each parent and (2) termination of parental rights is in the best interests of the children. Each parent promptly moved to vacate the default order terminating parental rights. The district court denied the motions.

Both father (A14-1650) and mother (A14-1669) appealed the August 27, 2014 order terminating parental rights. This court construed each appeal to be from both the August 27, 2014 order terminating parental rights and the September 4, 2014 order denying the parents' motions to vacate the termination order, and consolidated the two appeals. Father's brief addresses both orders, but mother's brief addresses only the order denying her motion to vacate, thereby waiving her challenge to the termination order. We affirm the district court's order denying each parent's motion to vacate the termination order, and we affirm the findings of fact and conclusion of law that a statutory ground exists supporting termination of father's parental rights. Because the district court failed to make particularized findings that termination of father's parental rights is in the best interests of the children, we are unable to meaningfully review this

issue.  We remand to the district court for particularized findings on the issue of whether termination of father's parental rights is in the best interests of the children.

## FACTS

T.R.L., date of birth July 17, 2008, and B.G.L., date of birth March 23, 2007, are the children of appellants N.M.L. (mother) and E.R.L. (father).  The children's first out-of-home placement due to parents' drug use occurred in a child-protection action in November 2010.  The children were returned to father's care in July 2011, and father was granted their sole physical and legal custody.  But the children were again placed out of home on March 24, 2014, due to parents' continued drug use and neglect of the children.  The children have been placed with their paternal grandparents, and the record reflects that they are doing well in that placement.

Respondent Itasca County offered services to parents.  Because parents continuously declined to use the services offered, the district court, in June 2014, relieved the county of additional efforts to correct the conditions that led to the out-of-home placement, finding that additional efforts would be futile.

The county petitioned for termination of parental rights, asserting as the statutory grounds for termination that parents failed to comply with the duties imposed on them by the parent-and-child relationship and that reasonable efforts to correct the conditions that led to placement have failed to correct the conditions that led to placement as set out in Minnesota Statutes section 260C.301, subdivision 1(b)(2) and (5)(i)–(iv) (2012).  The petition also asserts that: (1) mental health needs of the children make it "imperative that

3

adults in their lives be very engaging, invested, chemically free, stable and consistent in ensuring that [their basic] needs are met"; (2) return to their parents "is contrary to the welfare" of the children; and (3) "it is paramount that the children are able to have permanency as soon as possible."

Parents, separately represented by appointed counsel, appeared at the initial hearing on the petition and denied the petition. The district court scheduled a pretrial hearing for August 21 and ordered mother and father to appear. The district court told parents that failure to appear at the pretrial hearing could result in termination of their parental rights without a trial.

Neither parent appeared at the pretrial hearing, and counsel for each parent made a record of failed attempts to communicate with parents, lack of knowledge of the whereabouts of either parent, and each parent's failure to communicate with counsel. The district court, taking judicial notice of documents in the record, stated on the record its findings that: (1) by their failure to appear, parents were in default; (2) the county made reasonable efforts to prevent out-of-home placement and for reunification; (3) parents failed to make use of services offered; (4) "reunification is not reasonable to occur now or in the foreseeable future"; and (5) termination of parental rights is "in the children's interest . . . so that the children can be free for adoption."

The district court issued a written order dated August 27, 2014 (TPR order). The TPR order recites the history of parents' and children's involvement with child-protection services, noting that, as of the date of the pretrial hearing, the children had been out-of-

4

home for more than 150 days in the current matter and had been out-of-home for 233 days in the prior child-protection action. The district court found that the county had provided reasonable services that mother and father refused to meaningfully utilize and that both parents "failed to correct the conditions which led to [out-of-home] placement and failed to substantially comply with court-ordered case plans." Regarding the best interests of the children, the TPR order states only that it is in the best interests of the children that parental rights be terminated.

On August 25, prior to issuance of the written TPR order, mother and father separately moved to vacate the default order pronounced by the district court at the August 21 hearing.[1] Mother supported her motion with an affidavit, asserting that she failed to appear at the pretrial hearing due to a medical appointment with a doctor who monitors her participation in a suboxone program. Mother attached a copy of a letter from the doctor stating that he saw her on the date of the pretrial conference, that she is taking suboxone, and that the appointment was a "necessary follow-up appointment and vital to her continued sobriety." The letter states that father "was at the appointment . . . and he is involved with [mother's] continued sobriety."

Father submitted an affidavit with his motion, asserting that he has "continued to pursue service to assist and further support" his sobriety and that he went with mother to

---

[1] The parents' motions and the district court order denying those motions refer to vacating a default "judgment." Because judgment has not yet been entered, we construe the references to be to the default TPR order, which is appealable. Minn. R. Juv. Prot. P. 47.02, subd. 1 ("An appeal may be taken by the aggrieved person from a final order of the juvenile court affecting a substantial right of the aggrieved person . . . .").

her appointment because he wanted to consult about the suboxone program and "getting an appointment is very difficult."

After a hearing on the motions, the district court concluded that neither parent met the criteria for vacating the default order because neither presented a reasonable excuse for failure to appear at the hearing and neither presented a reasonable defense on the merits of the cases. The appeals of father and mother followed and have been consolidated.

## D E C I S I O N

**1.   The district court did not abuse its discretion by denying parents' motions to vacate the default order.**

Minn. R. Juv. Prot. P. 46.02 provides in relevant part that a district court may relieve a party from a final order, including a default order, due to excusable neglect or "any other reason justifying relief from the operation of the order." The supreme court has held that a party seeking relief from a default order terminating parental rights must demonstrate:

> (1) . . . a reasonable defense on the merits of the case; (2) . . . a reasonable excuse for . . . failure to act; (3) . . . due diligence after the notice of . . . the default [order]; and (4) the opposing party will not be substantially prejudiced if the motion to vacate the default [order] is granted.

*In re Welfare of Children of Coats*, 633 N.W.2d 505, 510 (Minn. 2001). All four factors must be met to justify vacation of a default order. *Id.* But a weak showing on one factor may be outweighed by a strong showing on the remaining factors. *Riemer v. Zahn*, 420

6

N.W.2d 659, 662 (Minn. App. 1988).  We review a district court's denial of a motion to vacate a default order for abuse of discretion.  *Coats*, 633 N.W.2d at 510.

The district court found that both parents acted with due diligence and that "[a]lthough the county is somewhat prejudiced through loss of trial preparation time, this does not rise to the level of substantial prejudice."  But the district court concluded that neither parent satisfied the requirement of showing a reasonable defense on the merits or a reasonable excuse for failing to appear without communicating with counsel or the district court.

On appeal, father argues that his affidavit asserting his efforts at maintaining sobriety, his interest in the suboxone program, and the fact that he had recently secured employment constitute a reasonable defense on the merits.  He argues that the August 14 Guardian Ad Litem (GAL) report, one of the documents relied on by the district court, references several services in which father was engaged.  But the GAL's report states that although father entered treatment on June 30, 2014, he left the program on July 3, 2014, after which he and mother stole a prescription and had it filled.  Although the GAL's report contains assertions made to her by father about his efforts to maintain sobriety, nothing that father told the GAL or asserted in his affidavit supports father's claim that he will be able to parent his children in the reasonably foreseeable future.  The district court did not abuse its discretion by determining that father failed to establish a reasonable defense to termination of parental rights for failure to correct the conditions that led to the children's out-of-home placement.

7

Mother argues that she demonstrated a reasonable defense on the merits by informing the district court that she is seeking sobriety through participation in the suboxone program. The district court noted that participation in that program is not inpatient treatment as required by mother's case plan. And mother has presented no evidence of ability to parent in the reasonably foreseeable future or about her progress or prognosis in the suboxone program. The district court did not abuse its discretion by concluding that mother failed to demonstrate a reasonable defense to termination of her parental rights.

We also conclude that the district court did not abuse its discretion by finding that neither parent established a reasonable excuse for failing to attend the pretrial hearing. Each had notice of the hearing date and possible consequences of failing to attend. Neither parent presented any evidence of an attempt to change the date of mother's medical appointment or the date of the pretrial hearing. Neither parent had any contact with counsel or the district court with regard to a potential conflict. The district court noted that lack of contact with counsel made counsel unable to meaningfully participate in the pretrial proceeding, leading the district court to reject parents' assertion that they "appeared" through counsel and that their personal appearance was not necessary.

2. **The evidence is sufficient to support the district court's finding that a statutory basis exists for termination of father's parental rights.**

The district court may terminate all rights of a parent to a child on one or more of nine statutory grounds. *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 672 (Minn. 2008). The district court found that the county had proved the statutory ground found in

Minn. Stat. § 260C.301, subd. 1(b)(5): that following out-of-home placement, reasonable efforts under direction of the court have failed to correct the conditions leading to placement. Father argues that the evidence relied on by the district court to establish the statutory basis for termination of parental rights in this case consists of "past history" and that the district court failed to consider conditions at the time of the default hearing. And father argues that the evidence does not support the district court's finding that no further efforts will correct parental deficits to allow parenting the children in the foreseeable future.

Father relies on the August 14 GAL report to the court, in which the GAL states that on July 23, parents said that "they are going to Celebrate Recovery in [Deer River], going back to Church at River of Life, . . . going to couples therapy . . . , [father] meeting with Dr. Bransford for medication management, and on the waiting list for Center for Drug and Alcohol treatment in Duluth" to support his argument that the district court "should reverse and remand for a hearing on the merits." But the August 14 GAL report supports termination of parental rights for both parents, noting that both had walked out of treatment on July 3 after only three days in the program, both had been involved in stealing and filling a prescription, and father had recently reported owing drug money. And the June 5 social-worker report to the court describes father's rejection of two chemical dependency opportunities open to him: rejection of the assistance of detox services and rejection of services offered by his Recovery Specialist worker, his attorney, law enforcement, and the social worker to get him access to chemical dependency

9

services.  The report states that father's urinalysis results have been positive for, or father has admitted to using, Dilaudid, Methamphetamine, Opana, Percocet, Oxycodone, Fentanyl and Buprenorphine (suboxone).  On this record, we conclude that there is sufficient current evidence to support the district court's finding that father failed to correct the conditions that led to the children's placement and no further efforts will allow father to adequately parent in the foreseeable future.

**3.      The district court failed to make particularized findings sufficient to permit meaningful review of its conclusory finding that termination of parental rights is in the children's best interest.**

The paramount consideration in all juvenile protection proceedings is the "best interests of the child."  Minn. Stat. §§ 260C.001, subds. 2, 3, .301, subd. 7; *B.J.-M.*, 744 N.W.2d at 672; *In re Welfare of M.D.O.*, 462 N.W.2d 370, 378 (Minn. 1990).  A finding that a child's best interests favor retaining the parent-child relationship can preclude termination of parental rights despite the presence of one or more of the statutory bases for termination.  *In re Welfare of M.P.*, 542 N.W.2d 71, 74 (Minn. App. 1996), *overruled in part on other grounds by In re Welfare of J.M.*, 574 N.W.2d 717, 722-24 (Minn. 1998).

Father argues that the district court failed to make more than a conclusory finding that termination of parental rights is in the best interests of each child.  We agree.

The district court is required to make findings analyzing: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interests of the child.  Minn. R. Juv. Prot. P. 39.05, subd. 3(b)(3).  In a termination of parental rights proceeding, the district court

10

must *explain why* termination is in the best interests of the child. *In re Tanghe*, 672 N.W.2d 623, 626 (Minn. App. 2003). "[A] district court's findings in support of any TPR order must address the best-interests criterion." *In re Welfare of the Child of D.L.D.*, 771 N.W.2d 538, 546 (Minn. App. 2009). When appellate review of the ultimate decision to terminate parental rights is not possible due to the district court's failure to make findings on the best interests of the involved children, we remand for best-interests findings. *Id.* at 547.

**Affirmed in part and remanded.**