*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0221**

In the Matter of the Welfare of the Child of: D. A. J., Sr. and C. A., Parents.

**Filed July 20, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-JV-14-6477

Mary F. Moriarty, Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant D.A.J., Sr.)

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Mary F. Moriarty, Fourth District Public Defender, Jerry Patterson, Assistant Public Defender, Minneapolis, Minnesota (for respondent C.A.)

Tera Elias, Minneapolis, Minnesota (guardian ad litem)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

In this appeal from the termination of his parental rights, appellant argues that the district court lacked personal jurisdiction over him and should have granted his motion to reopen the default termination. Because we conclude that the district court had personal

jurisdiction over appellant and that the district court did not abuse its discretion when it denied appellant's motion, we affirm.

## FACTS

Appellant-father D.A.J., Sr. (D.A.J.) appeals the termination of his parental rights to D.A.J., Jr. (child), born December 18, 2007. In April 2009, the district court transferred sole legal and physical custody of the child to D.A.J. In early May 2014, respondent Hennepin County Human Services and Public Health Department (agency) filed a child in need of protection or services (CHIPS) petition after a search of the home where D.A.J. and the child were staying revealed drugs. The search uncovered drug paraphernalia and baggies of drugs that were accessible to the children living in the home. The home also had no food and was very dirty.

On August 14, 2014, the district court adjudicated the child as CHIPS in a default order after D.A.J. failed to appear for the trial. The district court ordered D.A.J. to comply with a case plan that consisted of: submitting to urinalyses, completing a mental health assessment, participating in in-home parenting education, obtaining and maintaining safe and suitable housing, attending supervised visits with the child, and maintaining contact with and following the recommendations of the agency and the guardian ad litem. A review hearing was scheduled for October 6, 2014.

On October 2, 2014, the agency filed a termination of parental rights (TPR) petition. The petition included a summons, ordering D.A.J. to appear for an October 6, 2014 admit/deny hearing. D.A.J. and his attorney appeared at the October 6 hearing. During this hearing, D.A.J. declined to accept the TPR petition and left the hearing before

2

it was over. D.A.J.'s attorney later stated, in an affidavit, that D.A.J. left the hearing because "he was agitated and upset that the [agency] filed a [TPR] petition; he believed he was complying with his case plan."

On October 15, 2014, the agency submitted an affidavit of diligent efforts to personally serve D.A.J. and sought an order for service by publication from the district court. The affidavit listed a Golden Valley address as D.A.J.'s last known address and the phone number on record for D.A.J. and stated that efforts were made to contact D.A.J. at Twin Town Chemical Dependency Center in St. Paul. The district court authorized service by publication, and the summons was published in *Finance and Commerce* on October 18, October 25, and November 1, 2014. The publication provided that the summons was for a CHIPS petition and that D.A.J. was required to attend a November 21, 2014 admit/deny hearing.

On November 21, 2014, the district court held a permanency hearing. D.A.J. was not present at this hearing, but his attorney represented him. C.A., the child's mother, was not present at the hearing because she was incarcerated in Iowa at the time. At this hearing, the agency's attorney requested to proceed by default due to D.A.J.'s absence, informing the court that D.A.J. refused personal service at the last hearing. In response, D.A.J.'s attorney objected to the default proceeding and asked the court to wait "another ten minutes" for D.A.J. to appear. The district court allowed the matter to proceed by default, explaining: "We've waited 50 minutes, and the reality is we're probably not going to conclude the hearing before 10:00 anyways by the time we hear from the social worker." The district court heard from the guardian ad litem, who explained that she

3

supported termination and had little communication with D.A.J. because she had been unable to maintain contact with him.

The district court then swore-in and heard testimony from Deborah Muenzer-Doy, a child protection social worker with the agency. Muenzer-Doy was assigned to the case since it first opened and described the court-ordered case plan that was imposed after the CHIPS adjudication. Muenzer-Doy testified that D.A.J. had not complied with multiple requirements of the case plan, such as: the urinalyses, the mental health assessment, the in-home parenting education, the maintain contact requirement, and the supervised visits. Out of the ten scheduled visits with his child, D.A.J. attended three. The supervised visits were subsequently suspended, and D.A.J. had not seen his child since July 10, 2014. D.A.J.'s attorney did not cross-examine Muenzer-Doy or present any evidence on D.A.J.'s behalf. The district court determined, on the record, that the statutory grounds for termination set forth in the TPR petition were proved by clear and convincing evidence.

On December 12, 2014, D.A.J.'s attorney sent the district court an e-mail, asking the court to vacate its oral TPR finding. On December 16, 2014, the district court issued its written termination order. The district court declined to vacate a "TPR based upon an email." On December 24, 2014, D.A.J. filed a motion to reopen the default and for a new trial or amended findings. D.A.J. argued that the district court erred by accepting testimony from the guardian ad litem and the social worker; that there was insufficient evidence to support termination; that the service was defective; that the notice by publication was insufficient because the publication was an "obscure legal publication

4

not generally read and accessible to the public at large"; that the court adopted the agency's findings verbatim; and that the agency failed to prove that termination was in the child's best interests.

The district court held a posttrial hearing on January 8, 2015. D.A.J. did not appear at the hearing despite his attorney's advice to be at the hearing. D.A.J.'s attorney spoke with D.A.J. the morning of the hearing, and D.A.J. confirmed that he would attend the hearing. Later the same day, D.A.J. told his attorney that he did not attend the hearing due to transportation difficulties. On January 26, 2015, the district court issued an amended posttrial order, denying D.A.J.'s motion for a new trial and motion for reconsideration.

D.A.J. appeals.

## D E C I S I O N

### I.

D.A.J. claims that the notice by publication was defective and therefore the district court lacked personal jurisdiction over him. The agency argues that service was effectively completed by both personal and published service. We agree.

"Whether service of process was effective, and personal jurisdiction therefore exists, is a question of law that we review de novo." *Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008); *see also In re Welfare of T.D.*, 631 N.W.2d 806, 808–10 (Minn. App. 2001) (applying caselaw regarding the effectiveness of service in civil proceedings to evaluate whether a mother was properly served in a TPR proceeding). In

conducting this review, we are bound to apply the facts as found by the district court unless those factual findings are clearly erroneous. *Shamrock*, 754 N.W.2d at 382.

## A. Personal Service

Rule 32.02 of the Minnesota Rules of Juvenile Protection Procedure mandates personal service of the summons and petition upon the child's parents in a TPR case. Minn. R. Juv. Prot. P. 32.02, subd. 3(a). Personal service requires "delivering the document to the person to be served or leaving it at the person's home or usual place of abode with a person of suitable age and discretion residing therein." Minn. R. Juv. Prot. P. 31.02, subd. 1. "The purpose of service of process is to give notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action." *Smith v. Flotterud*, 716 N.W.2d 378, 382 (Minn. App. 2006) (quotation omitted), *review denied* (Minn. Sept. 27, 2006).

Personal service cannot be avoided by physically refusing to accept the summons. *Nielsen v. Braland*, 264 Minn. 481, 484, 119 N.W.2d 737, 739 (1963). In *Nielsen*, the supreme court explained that "it is generally held that if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons." *Id.*; *see State v. Olsen*, 278 Minn. 421, 423-24, 154 N.W.2d 825, 826-27 (1967) (determining service was effective when process server told individual as he exited a building that he had "something here for you" and later that "this is a court order signed by a judge").

6

In its October 6 order, the district court stated that the agency contended that counsel for D.A.J., Mr. Yang, "accepted the permanency petition on his client's behalf (for Mr. Yang to give to [D.A.J.]), but when Mr. Yang met with [D.A.J.] he declined to accept service of the permanency petition" and that "[Mr. Yang] attempted to hand [D.A.J.] a copy but when he was informed of the prior default on the CHIPS case he declined to accept service." D.A.J. argues that these statements by the district court are not actual findings of fact but merely a summary of what participants of the October 6 hearing relayed. We agree with D.A.J. that the district court's statements are not findings of fact but only recitations of the agency's claims. *See Dean v. Pelton*, 437 N.W.2d 762, 764 (Minn. App. 1989) ("Reciting the parties' claims may be helpful in understanding what the trial court considered in making its findings; however, the findings themselves must be affirmatively stated as findings of the trial court."). We also note that a transcript of the October 6 hearing has not been provided on appeal.

However, a transcribed recording is not necessary for us to determine whether personal service on D.A.J. was effective. The district court found in its January 13 and 26 posttrial orders that D.A.J. "was present and refused service. [D.A.J.] left the hearing upset and did not wait to obtain a new hearing date." The district court further found that "[i]t is through [D.A.J.'s] own actions that he did not receive personal service of the Notice of Hearing because he refused service in person, left the hearing before it was over, did not wait to receive the new hearing date, and was not in contact with the [agency]." These statements are not merely recitations of the agency's claims. The district court made affirmative findings regarding D.A.J.'s refusal to accept personal

7

service. Furthermore, Mr. Yang filed an affidavit explaining that D.A.J. left the October 6 hearing early because he was "agitated and upset that the [agency] filed a [TPR] petition."

The record does not suggest that the district court's factual findings are clearly erroneous. The record shows that D.A.J. was aware of the TPR proceeding and of the summons in the TPR case but that he refused to physically accept the summons and petition. Although the district court did not make the conclusion that personal service on D.A.J. was effective, based on the record and the district court's factual findings, we conclude as a matter of law that personal service was effectively made upon D.A.J.

## B. Service by Publication

The juvenile rules generally require personal service "[u]nless the court orders service by publication pursuant to Rule 31.02, subdivision 3." Minn. R. Juv. Prot. P. 32.02, subd. 3(a). Rule 31.02, subdivision 3, requires that "[t]he court shall authorize service by publication only if the petitioner has filed a written statement or affidavit describing diligent efforts to locate the person to be served." Minn. R. Juv. Prot. P. 31.02, subd. 3. Resort to service by publication should be made only where, "after due diligence, the party's whereabouts cannot be ascertained." *Electro-Measure, Inc. v. Ewald Enters., Inc.*, 398 N.W.2d 85, 88 (Minn. App. 1986), *review denied* (Minn. Mar. 13, 1987).

First, D.A.J. argues that the published notice was defective because it only contained his St. Paul address and did not include his Golden Valley address, which was listed as the last known address in the service by publication affidavit. The cases relied

8

on by D.A.J. to support his argument regarding his address are inapposite because these cases deal with publications that were made in states other than where the individual allegedly lived in. *See, e.g.*, *Shamrock*, 754 N.W.2d at 380-81 (summons published in the Minneapolis *Finance and Commerce* when affidavit of identification indicated that the individual resided in Washington, D.C.). Here, the summons was published in *Finance and Commerce*, a newspaper that is circulated in Minnesota, and it was not alleged that D.A.J. lived outside the State of Minnesota. D.A.J. does not explain how listing the St. Paul address instead of the Golden Valley address could have resulted in confusion as to the intended recipient of the published summons or caused the summons to be published in a newspaper that is not distributed in Golden Valley.

Second, D.A.J. claims that the published notice was defective because it was titled as a CHIPS proceeding and stated that it was for an admit/deny hearing. D.A.J. is correct that the publicized summons was incorrectly titled as a CHIPS proceeding. It is not clear from the record why the summons was titled as a CHIPS matter as the child was already adjudicated CHIPS at the time the summons was published.

The juvenile rule addressing the requirements of a summons for a TPR provides that:

> A summons shall contain or have attached:
>
> (1) a copy of the petition, court order, motion, affidavit or other legal documents not previously provided; however, these documents shall not be contained in or attached to the summons and complaint if the court has authorized service of the summons by publication pursuant to Rule 32.02, subdivision 3(a);
> (2) a statement of the time and place of the hearing;

9

(3) a statement describing the purpose of the hearing;

(4) a statement explaining the right to representation pursuant to Rule 25; and

(5) a statement that failure to appear may result in:

   (i) the child being removed from home pursuant to a child in need of protection or services petition;

   (ii) the parent's parental rights being permanently severed pursuant to a termination of parental rights petition;

   (iii) permanent transfer of the child's legal and physical custody to a relative;

   (iv) a finding that the statutory grounds set forth in the petition have been proved; and

   (v) an order granting the relief requested.

Minn. R. Juv. Prot. P. 32.02, subd. 4(a).

Although the summons was mislabeled as a CHIPS proceeding, the summons satisfied the rule 32.02 requirements and included a warning that a failure to appear at the hearing could result in the permanent severance of parental rights. While the agency should be more attentive in the future to avoid similar errors, we conclude that the error was harmless as the published service did advise of the most crucial information: that a failure to appear at the November 21 hearing could result in a TPR.

Next, D.A.J. argues that the published service erroneously described the hearing as an admit/deny hearing. D.A.J. claims that the admit/deny hearing took place on October 6. The record illustrates that the court and the parties understood that the November 21 hearing was a continuation of the October 6 admit/deny hearing that D.A.J. abruptly left. Specifically, the December 24 affidavit submitted by D.A.J.'s attorney stated that the "Admit/Deny Hearing was continued to November 21, 2014, at 9:00 a.m."

Lastly, D.A.J. argues that the agency's claims that both personal service and service by publication were completed are inconsistent. The record shows that D.A.J.

10

failed to maintain contact with agency workers, with the court, and with his child since the initiation of the child protection proceedings in May 2014. Likewise, D.A.J.'s abrupt exit during the October 6 hearing and subsequent lack of communication with his social worker and the agency complicated efforts to serve him. Due to the consistent lack of contact the agency had with D.A.J., it was not erroneous for the agency to attempt different forms of service to ensure proper notice. In sum, the chief purpose of service—notice—was satisfied through both personal service and service by publication, and therefore the district court had personal jurisdiction over D.A.J.

## II.

D.A.J. argues that because the juvenile court summarily terminated his parental rights, the court should have granted his rule 46 motion to open the default order. Minnesota Rule of Juvenile Protection Procedure 46.02 provides, in relevant part, that a district court may relieve a party from a final order, including a default order, due to excusable neglect or "any other reason justifying relief from the operation of the order." The supreme court instructs that a party seeking relief from a default order terminating parental rights must demonstrate that:

> (1) [he] has a reasonable defense on the merits of the case;
> (2) [he] has a reasonable excuse for [his] failure to act;
> (3) [he] acted with due diligence after the notice of entry of the default judgment; and (4) the opposing party will not be substantially prejudiced if the motion to vacate the default judgment is granted.

*In re Welfare of Children of Coats*, 633 N.W.2d 505, 510 (Minn. 2001) (applying Minn. R. Civ. P. 60.02, which provides substantially the same bases for relief from a default

11

order as Minn. R. Juv. Prot. P. 46.02). All four factors must be met to justify vacating a default order. *Id.* But a weak showing on one factor may be outweighed by a strong showing on the remaining factors. *Riemer v. Zahn*, 420 N.W.2d 659, 662 (Minn. App. 1988). This court reviews a district court's denial of a motion to vacate a default order for abuse of discretion. *Coats*, 633 N.W.2d at 510.

First, the district court found that D.A.J. provided no support for his assertion that the grounds for TPR were not proven by clear and convincing evidence. It further concluded that D.A.J. failed "to cite with specificity why the findings and evidence supporting the order to terminate parental rights were insufficient." On appeal, D.A.J. argues that we cannot determine if there is a defense on the merits because "there was virtually no testimony at the abbreviated default hearing, because [D.A.J.] did not appear because he wasn't notified, and because he never received the case plan." Although the record is slim in the case, this is primarily due to D.A.J.'s failure to maintain contact with his social worker and attend hearings. Moreover, D.A.J. declined to participate in the parenting education part of the case plan and failed to attend scheduled visits with his child. Based on the record, D.A.J. cannot establish a reasonable defense on the merits.

Second, D.A.J. cannot demonstrate that he had a reasonable excuse for his failure to attend the November and January hearings. D.A.J. claims that he did not attend the November admit/deny hearing because he was not aware of the hearing. Because service of process was effective, D.A.J. does not have a reasonable excuse for his failure to attend the November admit/deny hearing. Moreover, in an amended order, the district court found that although D.A.J.'s counsel argued that D.A.J. was unable to attend the

12

January 2015 hearing due to transportation issues, D.A.J. "did not contact the Court the day of the hearing to notify the Court of the transportation issues, and [D.A.J.] did not request to appear by phone or continue the hearing to another time that he could attend."

Third, although D.A.J. filed a motion to reopen the default termination approximately a month after the default hearing, D.A.J. failed to appear at the hearing on the motion to reopen the default order. Further, D.A.J. did not provide the district court with an explanation or reason why he was not in attendance before the district court issued its order. In response to D.A.J.'s motion to reopen the default proceeding, the district court explained in its January 13 order that "five days after the hearing, the Court has not heard any explanation or reason why [D.A.J.] was not at the motion hearing that he had requested." While D.A.J.'s motion was timely, his continuous absence at hearings pertaining to the welfare of his child negates any due diligence in making the motion.

Lastly, while the agency may not be substantially prejudiced if the motion to vacate the default is granted, we conclude that the greatest prejudice will be to the child. The child has been in out-of-home placement since May 2014, and D.A.J. has failed to comply with his case plan and maintain contact with his child. The district court entered default orders in both the CHIPS and TRP proceedings due to D.A.J.'s failure to attend hearings. Vacating the district court's default order will only prolong the time until a permanent placement is found for the child. Thus, we conclude that D.A.J. cannot satisfy the fourth prong.

Because D.A.J. cannot satisfy the requirements necessary to vacate the default order, the district court did not abuse its discretion when it denied D.A.J.'s motion to reopen the TPR order.

**III.**

D.A.J. argues that the November 2014 hearing was a "sham" or "pretend" trial and therefore violated his due-process rights. We disagree.

This court reviews de novo whether a parent's due-process rights have been violated. *In re Welfare of Children of B.J.B.*, 747 N.W.2d 605, 608 (Minn. App. 2008). "The applicable due-process standard for juvenile proceedings is fundamental fairness." *Id.* When considering whether a party has been deprived of due process, a court "balances the private interest affected by official action, the risk of erroneous deprivation of that interest through the procedures used and the value of additional or substitute procedural safeguards, and the government's interest." *Id.*

If a parent fails to attend an admit/deny hearing, a pretrial hearing, or a trial after being properly served, the district court may proceed in default, receive evidence in support of the petition, and grant relief if the petition is proved by the applicable standard of proof. Minn. R. Juv. Prot. P. 18.01-.02.

The caselaw relied on by D.A.J. in support of his "sham trial" argument is inapposite. D.A.J. relies on *In re Welfare of Child of L.F.*, 638 N.W.2d 793 (Minn. App. 2002) for support. But this court's opinion in *L.F.* was reversed by the supreme court. In *In re Welfare of Child of L.F.*, 644 N.W.2d 796, 796-97 (Minn. 2002), the Minnesota Supreme Court reversed this court's determination that the default hearing violated due

14

process because it was not a real judicial proceeding. In reviewing the due-process allegations, the supreme court concluded that the evidentiary hearing on the petition, testimony from the social worker, guardian ad litem, and child's grandmother, and the district court's finding that the termination was based on a failure to correct the conditions leading to out-of-home placement constituted a "real judicial proceeding." *L.F.*, 644 N.W.2d at 797 (quotation omitted). Similarly, this court's opinion in *In re Welfare of Children of Coats*, No. CX-99-2142, 2000 WL 944513 (Minn. App. July 11, 2000) was reversed by the supreme court in *Coats*, 633 N.W.2d 505. In *Coats*, the supreme court determined that the default judgment against the mother did not constitute a sham trial because the district court took evidence and was focused on the welfare of the children. 633 N.W.2d at 512.

At the November hearing, D.A.J. was represented by his attorney, and his attorney objected to the default proceeding. During the hearing, D.A.J.'s social worker testified that D.A.J. had not complied with multiple aspects of his case plan and had not maintained contact or inquired about his child in several months. D.A.J.'s attorney did not cross-examine the social worker or object to the district court taking judicial notice of records in the CHIPS and permanency matters.

Here, although the hearing was brief, it was not pretextual. The shortage of exhibits and testimony was primarily due to D.A.J.'s lack of contact with his social worker and his failure to comply with the case plan. D.A.J. was represented by counsel at the hearing, and notice was provided that failure to attend this hearing could result in

15

the termination of his parental rights.  Thus, the hearing did not violate D.A.J.'s due-process rights.

**Affirmed.**